```
                                                      FILED
                                            U.S. DISTRICT COURT
                                            DISTRICT OF COLORADO

                                            2015 OCT -6  AM 11: 21

                                            JEFFREY P. COLWELL
                                                  CLERK

                                            BY_____DEP. CLK
```

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Case No. 14-cv-02931-CBS

HEIDI WODIUK

      Plaintiff,

PUEBLO COUNTY SHERIFF'S DEPARTMENT OFFICER

CAITLIN GRAZIANO, in her individual and official capacities,

      Defendant.

---

NOTICE: PLAINTIFF, NOTICE IS TO NOTIFY THE U.S. DISTRICT COURT OF ATTORNEY FAILURE TO COMPLY TO FEDERAL COURT LAWS TO DO A PROPER INVESTIGATION AND TO NOTIFY THE COURTS OF TONY VIORST EXTREME MISCONDUCT IN DECIVING THE PLAINTIFF IN THIS CASE AND ITS CONTENTS INVESTIGATED, WHICH WERE NEVER DONE AS REQUIRED.

---

      Plaintiff, Dr. Heidi Wodiuk, is not an attorney but in her civil rights to justice and as a medical doctor is in full capacity to request that her attorney Tony Viorst be in penalty of the federal courts requirements to this case as he has failed his attorney obligations and rather deceived the plaintiff that Mr. Viorst did his investigation and as of to date Dr. Wodiuk has found out he did not contact anyone not even the people listed as expert witnesses that Mr. Viorst provided to the courts. Dr. Heidi Wodiuk is requesting that the courts in this case investigate Mr. Tony Viorst's misconduct and also report his actions and involvement to federal agents at FBI who can investigate.

I, the plaintiff Dr. Heidi Wodiuk, am required to notify any misconduct and in this case to the courts. As advised by the Colorado Supreme Court clerk to notify this court of the misconduct that was organized and premeditated, thus the reason for this notice.

Plaintiff's attorney Tony Viorst is aware of the grand treason to kidnapping of Dr. Wodiuk's daughter in case 2007DR1166 on 7-22-2013 to be the bases of the 7-22-2013 groundless,

1

unjustified CMHIP mental hold case # 13MH252 as the premeditated organized crime contrived before arresting Dr. Wodiuk and using excessive force to try and establish Dr. Wodiuk to be a danger.  Defendant, Pueblo Sheriff Detective Caitlyn Graziano as Mrs. Graziano hudsons excessive force report is an act of falsity as no one can be pinched through body armor and this case part of grand treason to kidnapping and after attorney Tony Viorst failure to investigate at this point in the case, Dr. Wodiuk finds it legally necessary that the courts be notified of what's transpired. Defendant in this case states that she was pinched.  However, experts in law enforcement uniforms for such dangerous arrests alleged are required by law and insurance to wear body armor. By the mere fact that it is impossible to pinch an officer through body armor, the defendant Graziano – Hudson reports and deposition are saturated with lies unsupported by legal and scientific fact and for attorney Tony Viorst to not see that and refuse to investigate poses great suspicion in the Plaintiffs mind as Mr. Viorst states he is a police brutality expert in law and therefore, should have seen this case was premeditated, thus, the extreme federal need for a federal investigation into this case. Tony Viorst has even failed to request defendant Graziano-Hudson two prior victims reports of excessive force used on them by the defendant prior to the 7-22-2013 as well as Tony Viorst has not requested the defendants disciplinary action taken for turning her recording devices off when they needed to be on.

Tony Viorst has seriously violated his obligations and I want it noted.

Exhibit 1- CD of recorded phone statements regarding Tony Viorst failure to investigate

Exhibit 2- Excessive force report made by defendant

Exhibit 3- 13MH252 mental health hold with affidavits by color of law unjustified and a unconstitutional order.

Exhibit 4- 13MH252 notice of constitutional mental health violation to mental hold

DR. HEIDI WODIUK

By: _____

Dr. Heidi Wodiuk

10-5-15

8448 Hwy 78 W

Beulah, CO 81023

Tel: (719) 671-8067

## CERTIFICATE OF SERVICE

I hereby certify that on this October 5, 2015, a true and correct copy of the above and foregoing NOTICE: PLAINTIFF, NOTICE IS TO NOTIFY THE U.S. DISTRICT COURT OF ATTORNEY FAILURE TO COMPLY TO FEDERAL COURT LAWS TO DO A PROPER INVESTIGATION AND TO NOTIFY THE COURTS OF TONY VIORST EXTREME MISCONDUCT IN DECIVING THE PLAINTIFF IN THIS CASE AND ITS CONTENTS INVESTIGATED, WHICH WERE NEVER DONE AS REQUIRED.  was, unless otherwise filed by U.S. postal mail or hand delivered with the Courts who provides notice to the following:

Sean Lane

7100 E. Belleview Ave., Suite G-11

Greenwood Village, Colorado 8011

Tel: (303) 333-4122


Anthony Viorst, Esq

Viorst Law Offices

950 South Cherry St. Suite 300

Denver, CO 80246


A Duly Singed Original is on File at the
Offices of Dr. Heidi Wodiuk

s/

10-5-15

3

14-CV-02931
DA copy   Sheriff copy
Fi.... exhibit 3

---

DISTRICT COURT, PUEBLO COUNTY, COLORADO
320 West 10th Street
Pueblo, CO 81003
719-583-7017

2013 JUL 22 AM 10:09

PUEBLO COMBINED COURT
CLERK OF COURT

THE PEOPLE OF THE STATE OF COLORADO

IN THE INTEREST OF

HEIDI WODIUK,

Respondent.

▲   COURT USE ONLY   ▲

Pueblo County Attorney's Office:

    Marci Day, #43142
    Assistant County Attorney
    215 West 10th Street
    Pueblo, CO 81003
    719-583-6630 (phone)
    719-583-6057 (fax)
    co.attv@co.pueblo.co.us

Case Number:
13 MH 252

Division: C3

Courtroom:

---

**AFFIDAVIT FOR EVALUATION AND TREATMENT**
**(C.R.S. § 27-65-105(1)(a)(I)) [formerly C.R.S. § 27-10-105(1)(a)(I)]**

---

COME NOW THE AFFIANT, pursuant to C.R.S. § 27-65-105(1)(a)(I), and respectfully allege and represent to this Honorable Court as follows:

1.     That attached hereto are a statements from the Affiants relating sufficient facts to establish that the above-named Respondent appears to be mentally ill and, as a result of such mental illness, appears to be an imminent danger to himself/herself or to others or gravely disabled.

2.     That it would be in the Respondent's best interest to be taken into custody and placed in a suitable facility for seventy-two (72) hour treatment and evaluation.  Colorado Mental Health Institute, Pueblo, Colorado is recommended.

3.     Other information known about Respondent is as follows:

(a)    Respondent's name and address: Heidi Wodiuk, 8448 Hwy 78 West, Beulah, CO.

(b)    Respondent's present whereabouts: same.

(c)    Respondent's age: 33 Date of birth: 08-11-80 Sex: F Marital Status: Married
Occupation:

(d)    The name, address, and telephone number of the attorney who has most recently
represented the Respondent:

We do hereby affirm that the above information and the Supplements to Affidavit are true
and accurate.

The above information was sworn to before me this 22nd day of July 2013.

_____
District Court Judge

22213

My sister had a mental break down of some sort around the first of July. her friend daniel called my dad on his cell phone and left him a message that heidi was talking about self distruction and my family want to check on her at her beulah home. She seemed very depressed when we want to her house she was very tired not sleeping. she made a comment that if she wants to kill herself it's her right and her decision. She was very irate and her emotions were high then low. she has been acting very different lately. She say's she's inlove with a Michael Ferte singer that she has never talked to or hung out with. she thinks this singer is sons to care w/out the house and when he does'n't show up she gets very depressed. her daughter olivia has a wolf doll. I asked Olivia why do you have a wolf doll and she say's it see's spirits. my sister talks about ghosts and spirits at a constant. she has said that olivia or my other neice peyton is sons to be abducted and be sex slaves. She say's she's a ~~——~~ phycic and she hides around w/detectives and solves chime in pueblo. she thinks people are tapping her phone, she thinks people are breaking in her house, she is very paranoid. She say's if she talks to me we need to go to a safe place or safe place or talk on a secured phone line, she threw her phone in the lake about 2 weeks ago cause she said someone was listing in ——>

She got a new phone but didn't change the number.
I feel that my sister needs some help she could
commit suicide on harm to anyone around her
her behavior is so not stable she's put a
message on her cell phone saying she's tired
at all of her friends her clients he family and
if your a new client go somewhere else.
I don't know if she is going to be ok if
she doesn't get help soon. Thanks

Luke bodiuk

My Daughter Has Been Hearing Voices and Following what they tell her to do.

I received a call from a good friend of hers stating she was suicidal. We as a family visited her and she told us she has the legal right to blow her fing head off.

She was extremely angry and threatning when we talked to her.

She has never showed this rage and anger to us ever.

She is extremely paranoid, she thinks there are cameras and recorders hidden in her house, her daughters fathers house and ours. She went when to ian coopers, the daughters fathers house at 4 am approx 1 week ago to look for recording devices in the childrens toy box. She has threatened to flee with olivia.

She goes into rages about the voices she is hearing in front of olivia.

When we went to she her olivia heard of all her vile talk and yelling, ran into grandmas arms

AND WANTED OUT OF THE HOUSE.
SHE IS PARANOID EVERYONE IS
TRYING TO HURT HER. HER FRIEND
FAMILY, BANKS CREDIT CARD COMPANIES.
SHE DOESN'T TRUST ANYONE.

THE VOICES TOLD HER THE
GRAND CHILDREN WHERE GOING TO BE
KIDNAPPED AND PUT INTO SEX TRADE.

THERE IS MORE THAT IS VERY
TROUBLING AND NEEDS A VERY GOOD
MENTAL HEALTH CARE WORKER

THINGS ARE PROGRESSING FROM
BAD TO WORSE.

14-CV-02931
exhibit 2

Law Supplemental Narrative:
                    Supplemental Narratives
                                      Narrative
Seq Name            Date
  1 Graziano C      13:45:16 07/22/2013
Supplemental, Incident Number:13S014649

On July 22, 2013 at approximately 9:00 A.M., I(Detective Caitlin
Graziano) went to the Court House on the third floor and met with Joseph
Wodiuk, Jill Wodiuk, and Luke Wodiuk at the County Attorney's Office.

After the three family members were done filing paperwork with the
County Attorney I followed them to the Judicial Building and I had my report I
wrote in reference to Heidi's behavior. Chief Judge Eyler signed off on the
Emergency Protection Order 13MH252. I explained to the family I would have to
locate Heidi and once I had done that I would transport her to the Colorado
State Hospital on the court order. I told the family they could only hold her
for seventy two hours or if the psychiatrist felt she needed more help they
could keep her longer.

Sgt. Shelly Bryant, Sgt. Dave Clements, Detective James Keen, Deputy
Mike Borders and I located Heidi in the parking lot of Kohl's on Elizabeth St on
the north side of Pueblo, CO. Heidi's vehicle was in the parking lot and the
decision was made to not go into the store so there wouldn't be a scene. We were
unsure of how Heidi would react due to her being very aggressive when Deputies
had dealt with her when they responded to her residence on a welfare check. Sgt.
Bryant was also concerned about he behavior because Heidi had called, screaming
it her, on the phone.

We saw Heidi approaching her vehicle in the parking lot and we had two
vehicles there and one pulled in front of Heidi's vehicle and the other behind
Heidi's vehicle. Heidi saw us and we got out of the vehicles and identified
ourselves as the Sheriff's Office and Heidi got inside the car and locked her
doors. Heidi had the window rolled down just a little bit and Sgt. Bryant and
Sgt. Clements were giving her verbal commands to shut the car off and step out
of the vehicle. Heidi attempted to back up and almost hit the unmarked patrol
vehicle that was parked behind her. Sgt. Bryant and Sgt. Clements were able to
get the driver's side door opened and Heidi was placed into custody. Sgt.
Clements explained to Heidi we had a court order to transport her to the
Colorado State Hospital for a psychological evaluation.

Sgt. Clements was asking Heidi who she wanted to come get her vehicle
and Heidi was telling him a phone number. Sgt. Clements asked her, "How do you
lock up your vehicle?" and she told him, "You're a cop figure it out." Heidi was
very uncooperative and wouldn't help us find someone to pick up her vehicle. It
was decided to transport her and when we got to the State Hospital, figure out
who would get her vehicle then. I was walking Heidi around the unmarked vehicle
to place her in it so she could be transported to the State Hospital. Heidi told
me to stop pushing her. I was giving Heidi verbal commands to walk to the other
side of the vehicle. Heidi was in hand cuffs, she grabbed my stomach and started
to pinch my stomach, sticking her finger nails into my skin. With the assistance
of Detective Keen she was placed in the vehicle.

At the State Hospital Heidi ended up telling Sgt. Dave Clements she
wanted her friend, William Hayes, to pick up the vehicle. At the State Hospital
Heidi kept telling us to call Detective Dan Corsentino. We showed Heidi a copy
of the court order signed by Judge Eyler per her request. After we left Heidi in
the custody of the State Hospital we came back to the Annex and contacted

William Hayes and gave him the keys to her vehicle so he could pick it up. We
also informed William when he got here that Heidi had a dog in the house and we
wanted to make sure it was taken care of. William stated he would talk to Heidi
and try and get keys to her house to feed and water the dog. Sgt. Clements and
Sgt. Bryant were asking William about Heidi's behavior lately. William stated he
thinks she is having mental health issues and thinks she does need help. William
went on to say he is a licensed massage therapist and when massaging certain
muscles it can release memories and he wasn't able to speak about what Heidi
told him due to it being a HIPPA violation. Sgt. Bryant told William we would be
asking Heidi about the sex offense she reported when she became more rational
and received some help.

    I called the Department of Social Services supervisor, Annette Zimmer,
who wasn't in. I left her a message explaining the situation. I told Annette on
the phone message about the situation with Heidi and that there was a small
child involved and she was in the custody of her father, Ian Cooper, right now.
I asked if she would please call me back as soon as possible. I called Ian
Cooper, the father, at (719) 250-0149 but he didn't answer the phone, his voice
mail was not set up to leave a message.

    On July 22, 2013 at approximately 3:00 P.M., I spoke with Annette Zimmer
on the phone and she informed me, with the court order signed to have Heidi
evaluated, Ian would be able to get temporary custody of Olivia. Annette stated
they already had an open case with Heidi and Olivia. Annette stated she had
contacted Ian previously and explained he needed to go down to the Judicial
Building and file the paperwork. I called Ian and asked if he would be going
down to the Judicial Building and he stated he would be tomorrow, July 23, 2013,
and filing the paperwork for custody of Olivia. I called Joseph and explained to
him what had occurred and that I had spoke to Department of Social Services and
Ian and what they were planning on doing.

EOR

                Date, Time, Reporting Officer:
Tue Jul 23 08:37:45 MDT 2013 Detective Caitlin Graziano
                Date, Time, Supervisor:
Tue Jul 23 15:57:06 MDT 2013 Sergeant Shelley Bryant

sp/ck/bv/Mon Aug 12 16:57:49 MDT 2013
 re/sp/ck/rsj/Tue Aug 20 07:40:28 MDT 2013

Law Supplemental Narrative:

Supplemental Narratives
Seq Name           Date                Narrative
  2 Graziano C        08:38:23 07/23/2013
Supplemental, Incident Number:13S014649

On July 23, 2013 at approximately 8:00 A.M., I(Detective Caitlin Graziano) spoke with Ian Cooper on the phone, he had called wanting to speak about Heidi.

Ian told me Heidi has always been a little off since he has known her during the end of her college years. Ian told me at first she just wanted to get into Chinese Medicine and he thought that was interesting. Ian stated Heidi got really into acupuncture and built a good business. Ian stated things became more strange when Olivia was around the age of one and was having her first Christmas. Ian stated him and Olivia were opening presents and Heidi came out and started to chant really loud and circle him and that is when they started to separate. Ian told me it was just way out there for him.

I asked Ian if Heidi had ever mentioned in all the years he has known her, if her father Joseph sexually assaulted her. Ian stated Heidi had never mentioned anything like that and he just can't see that ever happening, Joseph doesn't seem that way at all. Ian told me Heidi was always the type if she was mad at you she was going to get you in trouble. Ian stated he remembers when he got placed on probation for Domestic Violence. I asked Ian what happened with that incident. Ian stated he got home from playing poker at the Elks because he is a member there. He went to sleep and was woke up by Heidi screaming at him. Ian stated Heidi was trying to stomp on his genital area and he had to punch her in the leg to get him off her. Ian stated she then pushed him out of the house and he was completely naked. Ian stated he was asking Heidi to open the door so he could get some pants and keys and he would leave. Ian told me Heidi wouldn't open the door and he ended up breaking in the house, grabbing his pants and keys and leaving the residence.

Ian told me the police never contacted him to get his side of the story and when he called in to report what had happened they stated charges had already been forwarded on him. Ian stated that is just one example, Heidi cashed one of his checks from work for $2,000 dollars that was accidentally mailed to his old address. Heidi had forged his signature and nothing was ever done with that case. I looked up that case, 11S014092 Theft, and charges were forwarded on Heidi to the District Attorney's Office for Forgery, I am going to be doing some follow up on this case.

Ian stated when Heidi got out of Parkview Hospital when she was taken in for her suicidal statements, she showed up at his house at four in the morning. Ian stated Heidi came into his house and was going through the toy box, stating she was looking for cameras and wires because they are bugging everything and watching everything they are doing. Ian stated Heidi just isn't right and needs help.

Ian stated the only thing that ever concerned him was Heidi has been becoming more and more unstable over the years. Ian stated when they lived together she would have boxes of herbs and other things, he wouldn't know what they are, delivered from China. Ian stated maybe she is doing some sort of

hallucinogen. Ian stated about a month ago Heidi stated she was trying to sleep
a lot because she was trying to become pregnant from Michael Fontaine through
her dreams. Ian stated she is always taking Olivia to her work and keeping her
out at all hours of the night and Olivia can't just be a normal little girl and
play.

Ian told me he was going to the Court today and file for custody of
Olivia until Heidi got some help. I gave him the case numbers he would need.

Date, Time, Reporting Officer:
Tue Jul 23 09:42:12 MDT 2013 Detective Caitlin Graziano
Date, Time, Supervisor:
Tue Jul 23 15:57:31 MDT 2013 Sergeant Shelley Bryant

sp/ck/bv/Mon Aug 12 17:09:10 MDT 2013

Law Supplemental Narrative:
Supplemental Narratives
Narrative

Seq Name              Date
 3 Clements D       13:03:20 07/24/2013
*** USE OF FORCE REPORT ***        INCIDENT #: 13S014649

SUBJECT'S NAME: Heidi Marie Wodiuk DOB- 08-11-80

DATE: 07/22/13    TIME: 11:30 am

LOCATION OF INCIDENT: Parking lot of Kohls Department store located at 5627 N.
Elizabeth Pueblo, CO

DEPUTY INVOLVED: Detective Caitlin Graziano

REPORTING SUPERVISOR: Sgt. David Clements

OTHERS PRESENT: Sgt. Shelley Bryant, Detective's James Keen and Mike Borders

REASON FOR FORCE USED: (mark an X for all that apply)

        To effect an arrest              __XX___
        To defend another                _____
        To restrain for safety reasons   _____
        To defend officer                __XX___

SUSPECTS RESISTANCE/ACTIONS:

        While Ms. Wodiuk was being escorted to Detective Borders vehicle she
grabbed Detective Graziano's stomach and began to squeeze the tissue with her
fingernails. She squeezed hard enough that it left a mark on her stomach. Ms.
Wodiuk became argumentative and would not have a seat in the back of the
unmarked patrol unit. She began screaming at Detective Graziano and called her a
"cunt". She would not comply with verbal commands to release her grip or have a
seat in the vehicle.


TYPE/LEVEL OF FORCE USED IN ORDER OF USE: (mark X for all that apply)

 _XX__ Empty hand control, (circle those that apply) muscling, pressure
points, strikes.

 _____ Chemical agent/oc

 _____ Impact weapon (baton/asp)

 _____ Less than lethal kinetic energy impact projectile (12ga bean bag)

 _____ Electronic stun device (M26 Taser S/N: _____)
                            (X26 Taser S/N: _____)

 _____ Detention Restraint Chair (Mental Health _____)

 _____ Firearm (if firearm used complete below information)

5

Make:
Caliber:
Serial Number:
Ammunition:

IF KNOWN, WAS THE SUSPECT UNDER THE INFLUENCE AT TIME OF INCIDENT: None were
identified, but the subject was being arrested on an Emergency Protection Order
(EPO) due her being unstable.

_____ Alcohol
_____ Drugs (prescription/illegal/controlled substances)
_____ Suspected drug/alcohol


PRIOR KNOWN INJURIES OR MEDICAL CONDITIONS OF SUSPECT AT TIME OF
INCIDENT: EXPLAIN: None


INJURIES TO SUSPECT RESULTING FROM THIS USE OF FORCE: EXPLAIN: None


MEDICAL TREATMENT SUSPECT RECEIVED: N/A


EXPLAIN: (include names of rescue, ambulance, hospital, physicians, and
medical staff involved in treatment of suspect) N/A


INJURY TO DEPUTIES: Pain to the tissue of her abdomen, otherwise no injury
reported.

EXPLAIN:


MEDICAL TREATMENT DEPUTIES RECEIVED: N/A
EXPLAIN:


OTHERS INJURED: N/A


PHOTO OR VIDEO EVIDENCE OBTAINED: N/A

_____ Photo

_____ Video

ADDITIONAL INFORMATION IF NEEDED:

      On Friday, July 19, 2013, I (Sgt. David Clements) assisted fellow
detectives with serving an EPO on Heidi Wodiuk (DOB: 08-11-80). The EPO was
obtained by fellow Detective Graziano and signed by a judge with the 10th
Judicial District. Upon receiving the signed EPO we were able to locate Ms.
Wodiuk's vehicle parked in the parking lot of Khol's of Pueblo. Upon arriving in
the area we observed Ms. Wodiuk's vehicle parked in the lot, facing south, and
unoccupied. Instead of entering the store to confront Ms. Wodiuk with the EPO we
waited in our unmarked patrol vehicles until she returned to her vehicle.

      Approximately ten minutes after our arrival we observed a female
approaching the compact vehicle we knew belonged to Ms. Wodiuk. The female, who

we later identified as Ms. Wodiuk unlocked the car door, entered, and then shut
to door. At this point we blocked her vehicle in with Sgt. Bryant's unmarked
vehicle on the south and Detective Mike Borders vehicle on the north. We all
exited the vehicles and approached Ms. Wodiuk's vehicle. I was wearing my
tactical vest that has "Sheriff" stenciled on the front. I ordered Ms. Wodiuk to
roll her window down and turn off the vehicle. Ms. Wodiuk put the vehicle in
reverse and attempt to back up. I began screaming at her to stop because she was
going to back into Detective Borders patrol unit. Ms. Wodiuk stopped the vehicle
but wouldn't comply with our verbal commands to put the vehicle in park and turn
off the vehicle. I told her several times that we had a EPO for her and
that she needed to roll down her window. Ms. Wodiuk rolled the window down a
couple of inches and began stating "Your don't have a warrant."

      Ms. Wodiuk would not comply with any of our commands to open the door
and tried rolling up the driver's window. I grabbed the glass and kept it from
being rolled up. Meanwhile Sgt. Bryant reached into the vehicle and attempted
to remove the keys from the ignition. Ms. Wodiuk grabbed Sgt. Bryant's arm and
attempted to keep her from removing the keys from the ignition. I heard Sgt.
Bryant say "She's got my arm." I continued giving Ms. Wodiuk verbal commands to
turn her vehicle off without compliance. I was able to get the window down far
enough for Sgt. Bryant to reach in and unlock the door. Once the door was opened
Ms. Wodiuk was pulled from the vehicle by Detective Keen and handcuffed. This
was done without much force and Ms. Wodiuk was in a standing position while
being handcuffed. Ms. Wodiuk continued to make a scene and demanded she see the
warrant/EPO.

      Sgt. Bryant and I stood by Ms. Wodiuk's vehicle while she was being
walked towards Detective Borders vehicle. I was on my cell phone attempting to
contact a party Ms. Wodiuk had provided to come pick up her vehicle when I heard
Ms. Wodiuk begin screaming at Detective Graziano. I turned to see what was going
on and heard Detective Graziano tell Ms. Wodiuk to let go of her stomach. Ms.
Wodiuk made a comment that I couldn't understand. I then witnessed Detective
Graziano apply two closed hand strikes/punches to Ms. Wodiuk's back, on her
right side. While applying the strikes I heard her giving Ms. Wodiuk verbal
commands to release the grip on her stomach. Ms. Wodiuk finally released the
grip but would not get into the back seat of the patrol unit. Detective Graziano
then used her knee to apply a common peroneal strike to Ms. Wodiuk's right
thigh. This technique distracted Ms. Wodiuk long enough for Detective Keen to
pull Ms. Wodiuk into the back seat of the patrol unit. Detective
Graziano was removed from the situation due to Ms. Wodiuk's.

      Ms. Wodiuk was transported to the State Hospital and walked into the
reception area. Ms. Wodiuk was making claims she had been beaten up to the staff
in the reception area. I advised Ms. Wodiuk who I was and attempted to calm her
down. Ms. Wodiuk didn't mention anything more about being "beaten", but demanded
we call Dan Corsentino, who would get her out. While speaking with her I did not
observe any signs of injury. Ms. Wodiuk was very uncooperative and did not want
to listen to reason. She demanded to see the EPO because she wanted to see the
judges signature. When I showed her the EPO she stated "That's not his
signature." Ms. Wodiuk only wanted to argue that we had not warrant for her
arrest and how the signature wasn't  real. She was left in the care of the staff
and I exited the building.

REPORTING SUPERVISOR: Sgt. David E. Clements

Bureau Captain _____

Bureau Chief   _____

Under Sheriff   _____



*14-CV-02931-CB*

*Exhibit 4*

| District Court<br>Pueblo County, Colorado<br>Court Address:<br><br>501 N Elizabeth<br>Pueblo, CO 81003 | |
|---|---|
| Plaintiff(s)/Petitioner(s): The People Of the State of Colorado<br><br>v.<br><br>Defendant(s)/Respondent(s): Dr. Heidi Wodiuk | ▲    COURT USE ONLY    ▲ |
| Attorney or Party Without Attorney (Name and Address):<br><br>Phone Number:        E-mail:<br>FAX Number:          Atty. Reg. #: | Case Number: **15MH109**<br><br>Division        Courtroom |

## NOTICE TO COURTS TO CEASE AND DESIST, BY REFRAMING FROM FILING UNJUSTIFIED GROUNDLESS MENTAL HOLDS ON DR. HEIDI WODIUK, AS THEY ARE A VIOLATION OF DR. WODIUK, FREEDOM TO WORSHIP AS ONE CHOOSES RIGHT, FREEDOM OF RELIGION RIGHT, FREEDOM OF SPEECH AMENDMENT 1 VIOLATION, A DUE PROCESS VIOLATION, AND CRS VIOLATION OF MENTAL HEALTH HOLD LAWS AND CRITERIA

For the following reasons:

This is Dr. Heidi Wodiuk legal notice to the court to cease and desist their misconduct and manipulation of the laws to harm the civil rights and civil liberties of Dr. Heidi Wodiuk. In this case as well as all the other groundless unsupported mental holds the court has allowed to be unjustifiable warranted against the constitution and the mental health laws to terrorize Dr. Heidi Wodiuk.

This case is incomplete with mental health criteria legally required by law to have to authorize a civil liberty to be ripped away from Dr. Wodiuk. To prove the illegitimate and incompetence of the judge Deborah eyler in this case the following are noted to prove the reasons for the legal notice to cease and desist and reframe from any further terrorizing of Dr. Wodiuk by the use of the willfully and intently misapplying the law in refusing to comply with C.R.C.P.

1. Two of the affidavits submitted in this case are not dated- one by Joe Wodiuk other by what appears to be by Jill Wodiuk as she is listed as the third witness in the paperwork. Making that an improper sworn affidavit.

2. One affidavit is not signed and therefore not a legal sworn affidavit

3. All affidavits to this case are incomplete of dates, times, and specific statements to any danger or threats to self or others.

4. Stating the law the "she had the right to blow her head off" is not statement of suicide but legal fact. Nowhere in joe Wodiuk affidavit stating this does it say Dr. Wodiuk had a gun out to blow her head off or that she was going to kill herself or was going to blow her head off, therefore, this affidavit merely only states a legal fact. It

1

is not against the law to blow your head off meaning to kill yourself and does not mean one is suicidal what so ever by mental heal hold laws.

5.  Joe Wodiuk further states Dr. Wodiuk is talking about listening devices and cameras, again this is not a threat to self or others nor does it illicit a suicide danger. Please see attached exhibit A and exhibit B to be filed of PBS publications of listening and camera devices as well as smart meters. It is not a danger nor a delusion to know scientific facts and just because the courts are ignorant to smart meters and technology does not mean it is in its legal capacity to deem another mentally ill or in need or imminent danger for having knowledge of the smart meter devices. As it is also documented in the New York Times magazines and Washington Post newspaper about listening devices and that we are recorded and watched 24/7 no matter where we go and that is a fact not mental illness. The new York times magazine even has published that listening devices are in all our electronics and sometimes in our children's toys, This too is a published fact and therefore, for the court to not be astute to the new laws and the technology caustic to the citizens civil rights and poses much danger to not only Dr. Wodiuk but many within the community.

6.  Talking to Spirits is a freedom of worship right as most all religious people commune with spirits in all forms of religion. So to say that Dr. Wodiuk is suffering from mental illness by this statement is a violation of the religious freedoms of the United States of America.

7.  The affidavits in this case are incomplete and appears to be ALL contrived groundless hearsay. To give statements about other individuals stating activity occurred or observed of Dr. Wodiuk such as a friend of Dr. Wodiuk stating she was going to ruin herself is hear say it does not list the friends name nor does the friend they are alleging provided a sworn affidavit to confirm legitimacy to this statement. Also the affidavits used for a mental hold on Dr. Wodiuk allege Ian Cooper observing Dr. Wodiuk going through a toy box at his house however, again this is unsupported and by C.R.C.P. hearsay, Ian Cooper did not file a sworn affidavit nor testify in this case to stating what Joe Wodiuk alleges.

8.  The courts alleges that Dr. Heidi Woduk has prior mental illness but does not support that medical statement which makes that hearsay and out of the scope of the judge in this case as Judge Deborah Eyler is not a mental health provider only a district court judge and nowhere in this case was a mental health care provider present to testify to any mental illness nor any mental health records or sworn statements from any mental health care practitioners. Again, making this case unjustified and not in accordance to mental health laws in fact a clear violation of Dr. Wodiuk civil rights. As Dr. Heidi Wodiuk would like to note and make it very clear to the court that no one prior to 7-22-2013 has ever diagnosed Dr. Wodiuk as mentally ill or suffering from mental illness. Therefore for the judge in this court to make a medical diagnosis is outside the scope of judge Deborah eylers canon codes and abilities by law.

9.  Dr. Wodiuk willfully on 7-5-2013 went to Parkview hospital to prove to her father Joe Wodiuk of whom she tried prior to address child sexual abuse with as he was her abuser and Joe Wodiuk refused and rather

2

without notice, unexpectedly demanded in Dr. Wodiuk home at 9pm on 7-5-2013 against Dr. Wodiuk will as Dr. Wodiuk was in bed and Dr. Wodiuk wanted nothing to do with her father after he threatened her life 7-4-2013.  The very next day, 7-5-2013 Joe Wodiuk then called 911 after Dr. Wodiuk demanded he leave her house again a second time and Joe Wodiuk told Pueblo Sheriff officer that he knew I his daughter was suicidal because by the mere fact the doors to my house were locked at 9pm and curtains drawn and demanded I be taken to the hospital. All after Joe Wodiuk said he would shut me up and discredit Dr. Wodiuk to her child abuse statements. (please see William Hayes police or sheriff report reporting the child porn picture found and legally reported that was taken of Dr. Heidi Wodiuk at the age of about 4 years old forced to nurse her infant brother while taking pictures of her doing so, to prove the child abuse recall statements of fact- also noted by others to be of such as well)

10. From 7-5-2013 Dr. Heidi Wodiuk had no contact what so ever with Luke Wodiuk, Joe Wodiuk, and Jill Wodiuk the entire time from 7-5-2013 even up to the day this case was filed there was no contact between the listed witnesses and Dr. Heidi Wodiuk so how is it they were aware of imminence?  Imminence is to be reported within 48 from the time the innocent occurred.  No dates of incidents occurred nor any dates in the affidavits of contact between Dr. Wodiuk and Joe Wodiuk, Luke Wodiuk and Jill Wodiuk which makes this case unconstitutional and a crime against Dr. Heidi Wodiuk.

11. The Pueblo Sheriff officer on 7-5-13 stated just go in and prove to them you are not suicidal because it appears that they your family are very worried so I willfully obliged to prove my innocence.  I went to corwin hospital on 7-5-2015 and because they do not have a psych ward there that could evaluate me and discharge me I was taken to Parkview psych ward where I was evaluated and discharged with papers that stated I was not a danger to self or others nor suicidal and no medications or mental illness found only that I was experiencing stress from recalling childhood sexual abuse noted in my record.

12. Therefore, for the court to legally state that I, Dr. Heidi Wodiuk refused to seek medical help on 7-22-2013 is a downright lie- a false report.  It is in Dr. Wodiuk full legal right to due process that such hearsay be presented to the courts with absolutely no piece of mental criteria met to meet a mental hold required is a crime upon the court against Dr. Heidi Wodiuk as no one contacted Dr. Heidi Wodiuk even by phone to get her side of the hearsay story with groundless allegations nor her Parkview medical hospital mental health practitioner.

13. Please review Pueblo sheriff Detective brutality report noting act in already contriving to take Dr. Wodiuk daughter from her the morning of 7-22-2013 and her falsification with social services that there was a case open against Dr. Wodiuk.  If the court investigates they will see there has NEVER been a case open against Dr. Heidi Wodiuk for child abuse to her daughter what so ever.  Caitlyn Graziano proceeds in her brutality report 7-22-13 and in deposition for federal court 14-cv-02931-CBS case that the reason detective graziano had to use excessive force against Dr. Wodiuk  was because she was pinched AFTER dr. Wodiuk was handcuffed which by law enforcement once the person is cuffed they are deemed compliant and under control.  Mind you no excessive force by Caitlyn graziano or Dr. Wodiuk occurred until the cuffs were on and

then Graziano states excessive force used because her belly was severely pinched leaving marking for days however, peace officer facts by CRS and the sheriff department insurance requirements as well as peace officers uniform duty for field requirements is that they are required to wear body armor and body armor is a Kevlar product capable of taking a bullet from a gun and saving a person's life by not allowing the bullet or knife penetrate to the torso, so for sheriff detective to state she was pinched is a lie noted as a false report and only contrived to give reason for her premeditated plan to injure Dr. Wodiuk severely. Dr. Wodiuk was then refused emergency room medical attention after Graziano admitted and detective Clements with the pueblo sheriff department that excessive force was used and that Dr. Wodiuk stated to CMHIP that she was injured and hurt by the arresting officers.

14.  By mental health laws a person is not to be sent for a psychological evaluation if in serious pain and injury because a false diagnosis can occur by the suffering of extreme pain. For the court to deny Dr. Wodiuk her medical rights in this case and in the mental hold filed on 9-5-2013 which all so is incomplete and unjustified to the letter of mental criteria for a mental hold placement is to Dr. Wodiuk a criminal act intently organized and orchestrated by the Pueblo law enforcement and Pueblo District Judges of the Courts.

15. In the 9-5-2013 mental health hold you will also see that Dr. Wodiuk was court ordered to me medically murdered by daily injections exceeding to medical standards. This is attempted murder orchestrated and conspired by the courts to attempt to Kill Dr. Heidi Wodiuk while at CMHIP after her daughter was kidnapped from her.

THIS IS LEGALLY NOTED SO THAT ONE DAY SOMEONE CAN SEE THAT THIS CASE WAS CONTRIVED, CONSPIRED BY INDIVIDUALS WHO ORGANIZE CRIME AGAINST ANOTHER SUCH AS DR. HEIDI WODIUK AND IN THIS CASE A MENTAL HEALTH EVALUATION ORDERED TO CMHIP ALL TO LEGALLY KIDNAP DR.WODIUK DAUGHTER FROM HER ON 7-26-2013. SUCH AN ACT BY LEGAL DEFINITION IS HUMAN TRAFFICKING.

I am not an attorney nor do I claim to be one but it does not take a rocket scientist to know this case is derived to kidnap Dr. Wodiuk child from her and assist Dr. Wodiuk abuser all for personal favors.

**I request the Court to:**

DR. HEIDI WODIUK DEMANDS IN HER FULL LEGAL CAPACITY HER RIGHT TO DEMAND THAT THE PUEBLO DISTRICT COURT CEASE AND DESIST FROM CONTINUING TO VIOLATE HER CIVIL RIGHTS AND RIGHTS TO BE PROTECTED BY THE COLOR OF THE LAWS.

 Further misconduct of the laws and the constitution in failing to apply them and protect Dr. Wodiuk rights by them will subject the judges within this Pueblo District Courts to a personal lawsuit as they are taking a personal agenda to harm Dr. Wodiuk by the use of their judicial legal powers. By the legal filing of this notice therefore, my Dr. Wodiuk right and full capacity of her rights is deemed a lawful notice and failure to comply subjects the Pueblo District Courts to personal lawsuits as calling Dr. Wodiuk a "Customer" is an act of business by legal definition and against the judicial Colorado canon.

## CERTIFICATE OF SERVICE

I certify that on October 2nd 2013 a true and accurate copy of the Motion to **NOTICE TO COURTS TO CEASE AND DESIST, BY REFRAMING FROM FILING UNJUSTIFIED GROUNDLESS MENTAL HOLDS ON DR. HEIDI WODIUK, AS THEY ARE A VIOLATION OF DR. WODIUK, FREEDOM TO WORSHIP AS ONE CHOOSES RIGHT, FREEDOM OF RELIGION RIGHT, FREEDOM OF SPEECH AMENDMENT 1 VIOLATION, A DUE PROCESS VIOLATION, AND CRS VIOLATION OF MENTAL HEALTH HOLD LAWS AND CRITERIA** was served on the other party by: placing it in the United States mail, postage pre-paid, and addressed to the following (include name and address):

To: Ian Cooper

        8968 Morton Ave

        Pueblo, CO 81023

_____          Petitioner/Plaintiff

                                                                    10-5-15



Exhibit B

**B**reathing new life into the traditional civics lesson, Peter Sagal, host of NPR's *Wait Wait… Don't Tell Me!*, travels across the country on a red-white-and-blue Harley-Davidson to find out how the Constitution works in the 21st century. Sagal introduces some of today's major constitutional debates and talks with ordinary Americans and leading constitutional experts about what the Constitution actually says and what it means, the dramatic historical events and crises that have defined it, and why all this still matters to Americans today.

**A MORE PERFECT UNION** The founders of the Constitution set up a delicate system of power sharing between states and the national government. Federalism has served us well but, as Peter finds out, it still sparks controversy today, over issues like medical marijuana and gun control.

**IT'S A FREE COUNTRY** Peter explores the history of the Bill of Rights, and sees how current battles are still being waged about freedom of speech, freedom of religion, and the right to privacy.

**CREATED EQUAL** The Fourteenth Amendment of 1868 established new notions of citizenship, equal protection, and personal liberty. Peter explores how this momentous amendment continues to influence and define the term "We the People."

**BUILT TO LAST?** Why has the Constitution survived for more than 225 years and is it up to the challenges of the 21st century? Peter looks at the systems that have kept the Constitution healthy and also at the political forces today that threaten to undermine the framers' original vision.

---

**SPECIAL FEATURES**

Behind the scenes bonus video ★ Spanish language version ★ and more!

*Special features are not rated or subtitled.*

---

A PRODUCTION OF TPT NATIONAL PRODUCTIONS IN ASSOCIATION WITH INSIGNIA FILMS

DIRECTOR STEPHEN IVES    PRODUCER AMANDA POLLAK    WRITER JAMIE BERNHARDT WITH PETER SAGAL
EXECUTIVE PRODUCER CATHERINE ALLAN    TPT CHIEF CONTENT OFFICER TERRY O'REILLY    EXECUTIVE IN CHARGE OF PRODUCTION GERRY RICHMAN
CUSP400 • APPROX. 240 MINUTES ON 2 DISCS • WIDESCREEN • TV–PG • ENGLISH 5.1 SURROUND • ENGLISH SDH SUBTITLES

Thank you! Your purchase supports programming that inspires people to Be more.® Visit PBS.org.




ISBN 978-1-60883-901-8

---

**CONSTITUTION USA** with *Peter Sagal*

DISC SET **2**

CUSP400

PBS

DVD
342.029
C7582
2–DVDS

PIKES PEAK LIBRARY DISTRICT



Gun Control. Drugs. Free Speech
Hit the road to find out if the Constitution
can keep pace with modern America.