IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-02931-WJM-CBS

HEIDI WODIUK,

       Plaintiff,

v.

PUEBLO COUNTY SHERIFF'S DEPARTMENT OFFICER CAITLIN
GRAZIANO, in her individual and official capacity.

       Defendant.

---

## ORDER ON PENDING MOTIONS

---

Magistrate Judge Shaffer

    This matter comes before the court on the following motions: (1) Plaintiff Heidi Wodiuk's "Motion for Appointment of Counsel in a Criminal Case" (doc. #197), filed on February 9, 2017; (2) Defendant Caitlin Graziano's[1] "Motion to Dismiss for Failure to Prosecute" (doc. #201), filed on February 23, 2017; and (3) Plaintiff Wodiuk's "Motion for: Contempt of Court Ex Parte Crimes to be Motioned in Reporting to FBI, the US Judicial Discipline Board and the United States President Donald Trump Today for the Prohibited Crimes Done in Ex Parte" (doc. #208), filed on May 18, 2017. None of these motions, to date, has generated a response from the opposing party. However, given the unusual posture of this case and the issues raised in the pending motions, the court will address them all at this time.

---

    [1]Since this action commenced, Ms. Graziano has married. The court will refer to the parties in this Order as they are identified in the caption to the Complaint.

# ANALYSIS

*I.      Plaintiff's Motion for Appointment of Counsel in a Criminal Case*

Ms. Wodiuk prefaces her motion by stating that she is "a defendant in this case" and "currently not represented by counsel." The motion specifically requests "appointment of counsel in a criminal case" and insists that Ms. Wodiuk cannot "proceed with the defense in this case without the assistance of counsel." As Ms. Wodiuk is the plaintiff in this action, I presume she is referring to her pending criminal action in Pueblo County District Court, *People of the State of Colorado v. Heidi Marie Wodiuk,* Case No. 2015CR001287 (hereinafter, the "criminal case").[2] Ms. Wodiuk argues that she is financially eligible "for the appointment of counsel from the Criminal Justice Act (CJA) Panel, 18 U.S.C. § 3006A(a)(1)(C)-(E)," and "need[s] federal counsel for Pueblo trial court" because of "federal subject matter case tried outside its jurisdiction." This motion is denied for the following reasons.

Based upon my review of the publically available docket sheet for the Pueblo County District Court criminal case, it appears that Ms. Wodiuk has court-appointed counsel.[3] The Pueblo County District Court appointed Michael Lee Garcia, Esq. to serve as Ms. Wodiuk's

---

[2]Plaintiff's motion bears an unusual caption. Although filed "IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO," the motion references "Criminal Action No. 15CR1287, 15S9, 14CV02931, 16CV00983." The caption also refers to the "United States of America, Plaintiff," as well as "The People of Colorado" and "Defendant Dr. Heidi Wodiuk."

[3]The court can take judicial notice of state court files. *Cf. State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1226 n. 7 (10th Cir. 2008) (taking judicial notice of documents in the public record); *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008) (acknowledging that a federal court may take judicial notice of state court documents). *See also* Fed. R. Evid. 201(b) (permitting a court to take judicial notice of a fact that is not subject to reasonable dispute because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

alternate defense counsel on December 7, 2016.  *See* Colo. Rev. Stat. § 21-2-101(1) (stating that an alternate defense counsel "shall provide legal representation in circumstances in which the state public defender has a conflict of interest in providing legal representation").[4]  I also note that Ms. Wodiuk filed a "Notice of: Case 15 CR1287 Status" (doc. #199) with this court on February 15, 2017, in which she specifically referenced her "attorney Michael Garcia."[5]

Moreover, I can find no legal support for the proposition that Ms. Wodiuk, as a state criminal defendant, is entitled to appointment of counsel under the federal Criminal Justice Act. That statute specifically directs federal district courts to implement a plan "for furnishing representation for any person financially unable *to obtain adequate representation*."  18 U.S.C. § 3006A(a) (emphasis added).  That qualifying language seemingly excludes Ms. Wodiuk, given that she already has the benefit of court-appointed counsel in her criminal case.  I am at a loss to understand how or why this court should use limited federally appropriated funds to provide a court-appointed counsel for a state criminal case in which the presiding judicial officer has taken steps to safeguard Ms. Wodiuk's Sixth Amendment rights.  *Cf. United States v. Alberte*, No. 2:08-cr-0190-GEB, 2009 WL 720876, at *2 (E.D. Cal. Mar. 17, 2009) (holding that Congress did not intend for federal CJA resources to be used to pay a federally-appointed lawyer to provide legal representation in a state court proceeding that was unrelated to a pending *federal*

---

[4]The docket sheet indicates that Ms. Wodiuk originally was represented by a deputy state public defender.

[5]Ms. Wodiuk's February 15, 2017 filing indicates that she asked Mr. Garcia to "notify this court of the status of 15CR1287, of which Mr. Garcia refused in email.  Violating and depriving Dr. Wodiuk again of all her rights."  It would be wholly inappropriate for this court to inject itself into the relationship between Ms. Wodiuk and her criminal defense counsel, particularly as that lawyer was appointed by the Pueblo County District Court.

*criminal action*).

In essence, Ms. Wodiuk asks this federal court to inject itself into a pending state criminal action. As Senior Judge Lewis T. Babcock explained to Ms. Wodiuk on August 16, 2016, in an Order of Dismissal (doc. #37) filed in *Wodiuk v. People of Colorado*, Civil Action No. 16-cv-00983-LTB, "[a]bsent extraordinary or special circumstances, federal courts are prohibited from interfering with ongoing state criminal proceedings." *See Younger v. Harris*, 401 U.S. 37 (1971); *Phelps v. Hamilton*, 122 F.3d 885, 889 (10th Cir. 1997). Senior Judge Babcock also noted in his Order of Dismissal Supreme Court precedent "recogniz[ing] that the States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief." *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986) (citing *Younger*, 401 U.S. at 44-45). I find that Ms. Wodiuk's motion is neither factually nor legally tenable and will deny the motion on that basis.[6]

II.     *Defendant's Motion to Dismiss for Failure to Prosecute*

Defendant Graziano argues that this civil action should be dismissed pursuant to Fed. R. Civ. P. 41(b). Ms. Graziano insists that dismissal is appropriate because Ms. Wodiuk "has taken

---

[6]While this court will not appoint a federal public defender to represent Ms. Wodiuk in her state criminal case, I have undertaken efforts to secure *pro bono* counsel for Plaintiff in this civil case. On January 8, 2016, this court entered an Appointment Order (doc. #116) directing the Clerk of the Court to select a member of the District Court's Civil Pro Bono Panel to represent Ms. Wodiuk in this matter. On April 4, 2016, Perry Glantz, Esq. was appointed to represent Plaintiff, and he entered his appearance on April 19, 2016. Unfortunately, Mr. Glantz was forced to withdraw from this action on September 15, 2016 after sustaining significant injuries in a bicycle accident. *See* Motion for Leave to Withdraw as Plaintiff's Counsel (doc. #163). To date, no other *pro bono* counsel has agreed to represent Ms. Wodiuk.

no substantive steps toward resolution of this case since" her original attorney withdrew in October 2015, even as she continues to "file irrelevant and meaningless documents with this Court." In sum, Defendant's motion contends that "Plaintiff's lack of relevant action has reached a degree where dismissal is an appropriate action by this Court." Ms. Graziano also asserts that if allowed to "re-depose the Plaintiff and . . . conduct Fed. R. Civ. P. 35 examinations of the Plaintiff," she "may file a Motion for Summary Judgment, based upon questions of qualified immunity which will then be resolved by this Court." To date, Ms. Wodiuk has not filed a response to this motion.[7]

Rule 41(b) states that "[i]f [a] plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." A dismissal under Rule 41(b) "operates as an adjudication on the merits" "unless the dismissal order states otherwise." Given that potential consequence, "[d]ismissing a suit with prejudice for failure to prosecute is a 'severe sanction' and should be a measure of last resort." *Sun v. CFS2, Inc.*, No. 16-CV-0236-CVE-TLW, 2017 WL 374473, at *1 (N.D. Okl. Jan. 25, 2017) ("dismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits'") (citing *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1143 (10th Cir. 2007) and *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921 (10th Cir. 1992)).

A.    <u>Procedural History</u>

It cannot be reasonably disputed that this case has proceeded slowly and remains

---

[7]Ms. Wodiuk filed on March 21, 2017 a "Settlement Claim Letter" (doc. #203). This submission does not address the facts or legal arguments advanced in Defendant's "Motion to Failure to Prosecute Dismiss."

administratively closed in the wake of orders I entered on June 23, and December 6, 2016. *See* doc. #157 and doc. #194. However, Defendant's suggestion that Ms. Wodiuk has failed to diligently pursue her civil action must be considered in a fuller factual context. The parties are certainly familiar with the protracted procedural history of this case, but a brief chronological history is warranted.

Ms. Wodiuk commenced this action on October 28, 2014 with the filing of a Complaint pursuant to 42 U.S.C. § 1983. The Complaint alleges generally that "[o]n July 22, 2012, in the parking lot of Kohl's Department Store on Elizabeth Street in Pueblo, Colorado, Officer Graziano attempted to take Wodiuk into custody on a mental health hold."[8] *See* Complaint, at ¶ 8. The Complaint asserts two claims under the Fourth Amendment: first, that Officer Grazianio "conducted an unreasonable search and seizure of Wodiuk's person," and second, that she used excessive force by "pulling Wodiuk out of her car, kneeing her in the back, and otherwise using a significant degree of force on a person who was not resisting in any way." *Id.* at ¶¶ 16 and 24. When this lawsuit was filed on October 24, 2014, Ms. Wodiuk was represented by Anthony J. Viorst, Esq.

During a Fed. R. Civ. P. 16 scheduling conference on February 4, 2015, I adopted the pretrial deadlines proposed by the parties, and set a discovery cutoff date of November 1, 2015 and a dispositive motion deadline of December 1, 2015. The court also set a deadline of April 1,

---

[8]Paragraph 8 of the Complaint alleges that the incident involving Ms. Wodiuk and Defendant Graziano occurred on July 22, 2012. However, paragraph 1 of the same pleading alleges that Defendant Graziano "seized and assaulted Heidi Wodiuk on or about July 22, 2013." I also note that the "Statement of Plaintiff's Claims" contained in the Rule 16 Scheduling Order (doc. #12) submitted by Mr. Viorst indicates that the subject incident occurred on July 22, 2012. For purposes of this Order, the court will refer to the operative date set forth in paragraph 8.

2015 for moving to join parties or amend the pleadings. The court directed the parties to designate affirmative experts pursuant to Fed. R. Civ. 26(a)(2) on or before September 3, 2015, and designate rebuttal experts pursuant to Rule 26(a)(2) on or before October 22, 2015. Those expert disclosures dates were proposed by the parties.

Following the February 4, 2015 scheduling conference, the parties proceeded with discovery. Plaintiff's counsel deposed Defendant Graziano on June 4, 2015. *See* doc. #62. That deposition lasted for 62 minutes and concluded with plaintiff's counsel's stating that he had "nothing further." Ms. Wodiuk also was deposed on June 4, 2015, in a session that began at 9:00 am and concluded at 2:22 pm.[9] During her deposition, defense counsel asked Ms. Wodiuk to "[t]ell me what happened" in the parking lot of the Kohl's Department Store.[10] Plaintiff provided a lengthy account of that day's events without invoking her Fifth Amendment right against self-incrimination. The latter point is significant. During the same deposition, when defense counsel asked about rental properties that are owned by Ms. Wodiuk and also include Michael Franti[11] on the deeds, Plaintiff responded that she was "not at liberty to discuss any of those matters at this time." Mr. Viorst alluded to "[s]ome criminal investigation" regarding Mr.

---

[9]Ms. Wodiuk's deposition transcript consists of 235 pages of testimony. By Minute Order (doc. #207) issued on May 12, 2017, I directed Defendant Graziano's counsel to provide the court with a complete copy of Ms. Wodiuk's June 4, 2015 deposition. A copy of this Minute Order was mailed to Ms. Wodiuk and defense counsel was instructed to provide Plaintiff with a copy of the same deposition transcript that was sent to the court. My May 12, 2017 Minute Order is not unlike the Minute Order (doc. #58) I issued on November 23, 2015 directing Ms. Wodiuk to provide the court with a copy of Ms. Graziano's June 4, 2015 deposition transcript.

[10]Again, there appears to be some question as to the date of the incident in Kohl's Department Store. During her deposition, defense counsel and Ms. Wodiuk refer to events that occurred on July 22, 2013.

[11]The court is under the impression that Mr. Franti is a musician and singer-songwriter living in California.

Franti's relationship to those properties, but conceded that he was not exactly certain what "investigation is going on." For that reason, counsel stated that Ms. Wodiuk was invoking her Fifth Amendment rights as to "any further questions on Michael Franti or any of those ownership interests."[12]

On September 16, 2015, Mr. Viorst moved to withdraw from this case, citing "irreconcilable differences" with his client. *See* Motion to Withdraw as Counsel for Plaintiff (doc. #19). Ms. Wodiuk opposed that motion (*see* doc. #26) on the grounds that her counsel should not be allowed to withdraw because he "has not done his obligations to factually investigate before filing this case and must do his due process obligations before . . . withdrawing." In a lengthy "Notice: Plaintiff, Notice to Notify the U.S. District Court of

_____

[12]During her deposition on June 4, 2015, Ms. Wodiuk also volunteered the fact that she and Ian Cooper had been involved in a custody dispute involving their minor child. Ms. Wodiuk stated that the custody dispute "started in August 2014 and ended in November of 2014," and was currently the subject of an appeal. On December 6, 2016, Ms. Wodiuk commenced an action in the United States District Court styled *Heidi Wodiuk, et al. v. Ian Cooper*, Civil Action No. 16-cv-02974-LTB. Ms. Wodiuk filed a "Petition for a Writ of Certiorari into 2007DR1166 Pueblo Colorado District Courts Legalized Kidnapping Case" (doc. #1), challenging the Colorado Supreme Court's refusal "to investigate or hear [her] filed writ of certiorari regarding kidnapping of her child and of herself resulting in 'Grand Treason to Kidnapping.'" On February 15, 2017, Senior Judge Babcock entered an Order of Dismissal (doc. #8) in Civil Action No. 16-cv-02974-LTB, finding that Ms. Wodiuk had failed to cure certain pleading deficiencies within the court-mandated deadline. In her "Response To: Order of Dismissal February 15, 2017 by Petitioner Dr. Wodiuk" (doc. #10), Ms. Wodiuk argued that Senior Judge Babcock's analysis was "erroneous" and "meretricious" and that his Order constituted "genocide acts in terrorism in acts of treason." Ms. Wodiuk also warned that "a world court case will be filed to seek justice for this treason to the treaties of nations to practice law" because Senior Judge Babcock's actions "LEGALIZED KIDNAPPING PENAL CODE VIOLATION 212.1, Sherman violations and Treason of torture and genocide." On April 18, 2017, Ms. Wodiuk filed a new federal action captioned *Heidi Wodiuk, et al. v. Ian Cooper*, Civil Action No. 17-cv-00943-GPG. This Petition again seeks "a writ of certiorari to review the judgment of the Colorado Supreme Court" based upon that court's refusal "to intervene into Grand Treason to Kidnapping" of Ms. Wodiuk's minor child with Mr. Cooper.

Attorney Failure to Comply with Federal Court Laws" (doc. #27), filed on October 6, 2015, Plaintiff explained that her counsel had "failed his attorney obligations and rather deceived the plaintiff that [he] did his investigation." Plaintiff further stated that the mental health hold underlying her arrest by Officer Graziano was related to "the grand treason to kidnapping (sic) of Dr. Wodiuk's daughter in [state case] 2007DR1166." Ms. Wodiuk asked that "the courts in this case investigate [her counsel's] misconduct and also report his actions and involvement to federal agents at FBI who can investigate."

During a hearing on October 8, 2015, Ms. Wodiuk agreed with this court that her professional relationship with Mr. Viorst had deteriorated to the point that counsel should be allowed to withdraw. In approving Mr. Viorst's request to withdraw, the court also granted Ms. Wodiuk's request for additional time to find replacement counsel, but warned that she would remain responsible for her case unless or until a new attorney entered an appearance. *See* Courtroom Minutes/Minutes Order (doc. #29). The court set a further telephone status conference for November 10, 2015 and stayed all discovery pending that status conference.

Mr. Viorst's motion and subsequent withdrawal as Ms. Wodiuk's counsel did not bring discovery to a complete halt.[13] On October 14, 2015, notwithstanding the stay entered by this

---

[13]Both sides have moved to reopen the June 4, 2015 depositions. Ms. Graziano filed on June 23, 2015 a "Motion for Continued Deposition of Plaintiff Heidi Wodiuk" (doc. #24), arguing that Plaintiff's counsel improperly directed his client not to discuss the paternity of her daughter, and invoked his client's Fifth Amendment rights in response to questions delving into the ownership of Ms. Wodiuk's rental properties. On October 28, 2015, Ms. Wodiuk filed a *pro se* "Motion 24 for Continued Deposition on the Defendant in this Case" (doc. #43). Ms. Wodiuk argued that a re-opened deposition was required because "Plaintiff attorney Tony Viorst did not complete his deposition on the Defendant" and because additional questioning was "necessary . . . so to better establish a basis of events that the Defendant recalls to have taken place on 07-22-2013 as the Plaintiff has further questions the defendant needs to divulge."

court, Ms. Wodiuk moved for a "Rule 35 Physical and Emotional Evaluation . . . On Defendant Caitlyn Graziano-Hudson" (doc. #31), which was followed by Defendant's October 28, 2015 "Motion for Medical Examinations Pursuant to Fed.R.Civ.P. 35" (doc. #47). On October 28, 2015, Ms. Wodiuk filed amended Fed. R. Civ. 26(a)(2) disclosures. *See* doc. #45.

Even as this action was proceeding, albeit in fits and starts, Ms. Wodiuk's legal situation became more complicated. Three days after Ms. Wodiuk was deposed on June 4, 2015, she was named as the defendant in *People of the State of Colorado v. Heidi Marie Wodiuk*, Pueblo County District Court, Case No. 2015CR001287. The felony complaint in that case charged Ms. Wodiuk with ten violations of Colo. Rev. Stat. § 18-5-902(1)(c) [identity theft], nine violations of Colo. Rev. Stat. § 18-5-102(1)(c) [forgery], and two violations of Colo. Rev. Stat. § 18-3-602(1)(c) [stalking]. The identity theft charges generally allege that Ms. Wodiuk "unlawfully, feloniously, and with the intent to defraud, falsely made, completed, altered, or uttered a written instrument or financial device containing personal identifying information or financial identifying information of Michael Franti." The forgery counts assert that Ms. Wodiuk

> with the intent to defraud Michael Franti, unlawfully, feloniously, and falsely made, completed, altered, or uttered a written instrument which was or which purported to be, or which was calculated to become or to represent if completed, a deed, will, codicil, contract, assignment, commercial instrument, promissory note, or other instrument which document did or may have evidenced, created, transferred, terminated or otherwise affected

various quitclaim deeds. Finally, the stalking claims allege that Ms. Wodiuk unlawfully, feloniously and knowingly made a credible threat to Michael Franti and "repeatedly followed, approached, contacted, placed under surveillance, or made any form of communication with, Michael Franti, in a manner that . . . caused Michael Franti serious emotional distress." *See* Ms. Wodiuk's "Petition for Writ of Certiorari for Trial Court Case 15CR1287 in Pueblo Colorado,"

(doc. #1, at pages 22-35 of 35), in *Dr. Heidi Wodiuk v. People of Colorado*, Civil Action No. 17-cv-00475-LTB.[14]  Trial in Ms. Wodiuk's criminal case originally was set to commence on March 6, 2017.

Neither side moved to stay this civil action after the criminal case commenced in Pueblo County District Court, but Ms. Graziano's counsel acknowledged during a hearing on October 8, 2015 that Ms. Wodiuk's alleged relationship with Mr. Franti is "kind of background, if you will, to this case."  Perhaps that explains why, on October 14, 2015, Ms. Wodiuk filed a *pro se* "Motion for Plaintiff Amendment 5 Rights to be Honored and Protected in This Case for Plaintiff Due Process Rights to a Fair Trial in Case 15CR1287" (doc. #32).  In this submission, Ms. Wodiuk asserted that she was facing a "groundless, meretricious, criminal case 15CR1287 in Pueblo Colorado" and asked this court to "honor and protect [her] right to plee (sic) the fifth amendment when being questioned anything about case 15CR1287."

As noted previously, Mr. Glantz entered his appearance on behalf of Ms. Wodiuk on

---

[14]Ms. Wodiuk filed this action in the United States District Court on February 22, 2017, seeking "federal court intervention into the unconstitutional trial court case 15CR1287 heard outside of the state trial courts subject matter jurisdiction."  More specifically, Ms. Wodiuk requested "federal intervention to dismiss and over throw all unlawful acts, proceedings, hearings and orders made in sedition in state trial court 15CR1287, 2007DR1166,1967CV17664 . . . as they are acts of treason and by treaties deemed levy for war acts."  On March 24, 2017, Senior Judge Babcock dismissed this action for failure to cure noted deficiencies in her initial papers.  *See* doc. #6.  Ms. Wodiuk was again reminded that "certiorari review of a state court decision more properly is filed in the United States Supreme Court," and also warned, as in an earlier case, that the district court "may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process."  *Id.*  In response to Senior Judge Babcock's Order of Dismissal, Ms. Wodiuk filed on April 4, 2017 a "Post Judgment Relief to Bias, Prejudice, Discrimination, Treason Judgment" (doc. #8) in which she accused Senior Judge Babcock of "ruling and judging in this case in a bias, prejudice, discrimination crime against Dr. Wodiuk in treason to GRAND TREASON TO KIDNAPPING of Dr. Wodiuk's child . . . and kidnapping of Dr. Heidi Wodiuk as noted in the writ of certiorari filings."

April 19, 2016. His ability to effectively represent his client was, unfortunately, complicated

from the outset of the engagement. On March 11, 2016, the Pueblo County District Court

entered in the criminal case an "Order Finding Defendant Incompetent to Proceed and

Committing Defendant for In-Patient Restoration to Competency." *See* Exhibit A (doc. #152-1)

attached to Plaintiff's "Motion for Appointment of *Guardian Ad Litem*." In its Order, the Pueblo

County District Court found "pursuant to Section 16-8.5-111, C.R.S., that [Ms. Wodiuk] is

'incompetent to proceed'[15] and committed Ms. Wodiuk to the "care and custody of the Colorado

Department of Human Services ("CDHS") for treatment directed toward restoring competency."

*Id.* On June 1, 2016, the Pueblo County District Court renewed its earlier findings in a second

"Order Finding Defendant Incompetent to Proceed, and Committing Defendant for In-Patient

Restoration to Competency." *See* Exhibit B (doc. #152-2) attached to Plaintiff's "Motion for

Appointment of *Guardian Ad Litem*."

    In view of the foregoing competency orders, Mr. Glanz filed a "Status Report" (doc. #

153) on June 17, 2016, as well as a contemporaneous "Motion for Appointment of *Guardian Ad

Litem*" (doc. #152). In moving for the appointment of a guardian ad litem, Mr. Glanz advised

that

        The finding of incompetency renders Plaintiff unable to confer and agree to the
        withdrawal of the numerous pending motions as recommended by counsel. The

---

[15]Under Colo. Rev. Stat. § 16-8.5-101(11), a criminal defendant is "incompetent to proceed" if "as a result of a mental disability or developmental disability, the defendant does not have sufficient present ability to consult with the defendant's lawyer with a reasonable degree of rational understanding in order to assist in the defense, or that, as a result of mental disability or development disability, the defendant does not have a rational and factual understanding of the criminal proceedings." That same statute defines "mental disability" as "a substantial disorder of thought, mood, perception, or cognitive ability that results in a marked functional disability, significantly interfering with adaptive behavior." *See* Colo. Rev. Stat. § 16-8.5-101(12).

finding of incompetency makes it impossible [for] the Plaintiff to continue with the present civil proceeding without the appointment of a *guardian ad litem*.

See Motion for Appointment of *Guardian Ad Litem*, at 2-3.

This court held a telephone status conference with counsel for the parties on June 23, 2016. At that conference, Mr. Glanz informed the court that Ms. Wodiuk was still in the custody of the Colorado Mental Health Institute at Pueblo ("CMHIP") which substantially impaired his ability to confer with his client. Mr. Glanz also informed the court that a guardian *ad litem* had been appointed for Ms. Wodiuk by the Pueblo County District Court in a then-pending civil lawsuit. After some discussion with the court, Mr. Glanz agreed that there was little to be gained by this court appointing a separate guardian ad litem, and indicated that he would consider asking the Pueblo County District Court to expand the authority of the state-appointed guardian *ad litem*. Based on that colloquy, this court denied without prejudice Plaintiff's "Motion to Appoint *Guardian Ad Litem*."[16] In anticipation of a further mental health evaluation by CMHIP due on August 18, 2016, this court administratively closed this action pending further developments in the criminal case. However, the court qualified that decision with the following observations:

I want to be very, very respectful of Ms. Wodiuk's rights; I want to make certain

---

[16]Ms. Wodiuk must have misunderstood her lawyer's June 17, 2016 motion, which referred to a competency determination by the "District Court of Colorado for the District of Pueblo in Case Number 15CR1287." On September 22, 2016, Ms. Wodiuk filed in this court what could only be described as a factually incorrect and highly intemperate "Motion to Provide Copy of Dr. Heidi Wodiuk's 'Incapacitation' Evidence to Deem Her in Need of a Federal GAL" (doc. #168). Plaintiff accused this court of "order[ing] a (GAL) guardian ad litem for Dr. Wodiuk" without holding "an evidentiary hearing as required." Although I denied without prejudice Mr. Glanz's motion, Ms. Wodiuk accused this court of violating her due process rights and "act[ing] in falsity committing a crime against Dr. Wodiuk's underlined entitled due process rights." *Id.* (emphasis in original).

> that her rights in this case are fully protected.  But I have to be just as scrupulous
> in my desire to ensure that Defendant's rights are protected. . . . But at some
> point, as a simple matter of fairness, we can't have this case hanging over the
> Defendant in perpetuity.

Again, Mr. Glanz was forced to withdraw from this case on September 15, 2016 for medical

reasons.

The Pueblo County District Court's docket in the criminal case indicates that on August

4, 2016, the court lifted the mental health stay as to Ms. Wodiuk.  One week later, the Pueblo

County District Court in *Pueblo Conservancy Dist. v. Pueblo West Metropolitan District*, Case

No. 1967CV17664, entered an Order Terminating Appointment of Guardian ad Litem.  In that

Order, the court noted:

> Respondent Heidi Wodiuk appeared in person, in custody, on August 11, 2016.
> She requested that the appointment of the Guardian ad Litem be terminated.  The
> court notes that the appointment was made due to the finding of incompetence to
> proceed in a criminal matter.  Respondent was found to be competent to proceed
> by the judicial officer in her criminal case on August 4, 2016, based on the report
> from the Colorado Mental Health Institute at Pueblo.  Therefore the Court agrees
> that the appointment of the Guardian ad Litem should be terminated and it is
> hereby ordered.

*See* Exhibit A (doc. #162-1) attached to Plaintiff's Status Report.

At my direction, Defendant Graziano filed her "Response to Court's Request for

Discovery Status" (doc. #192) on December 1, 2016.  In that filing, defense counsel advised that

> Defendant believes that the only discovery remaining to be conducted if the case
> is re-opened would be the continued deposition of Plaintiff and, possibly, a
> physical and a mental health evaluation of Plaintiff pursuant to FED.R.CIV.P. 35.
> The necessity of these examinations depends in large part on Plaintiff's testimony
> during her renewed deposition. This discovery could be completed fairly quickly,
> but would depend on Plaintiff's availability to complete her deposition and,
> potentially, undergo two medical examinations. However, it is possible that
> Plaintiff's deposition could eliminate the present need for the two medical
> examinations.

Ms. Wodiuk filed her own "Status Report" (doc. #193) on December 2, 2016. That report stated:

1.      Dr. Heidi Wodiuk has reviewed the 15CR1287 case and it appears that there is NO case by color of law and constitution stipulates for a prosecution requirement and criteria to be met first before probable cause can be met. Therefore, it is in the best interest of both parties to wait for Dr. Wodiuk's 5th Amendment right to be met for the case's full content to be exposed properly.

2.      Dr. Heidi Wodiuk is asking the court to maintain this court case as it is until case 15CR1287 is dismissed unless this courts actors wish to be aiding and abetting case 15CR1287 malicious prosecution acts as it already has.

In light of the foregoing submissions, this court held a status conference on December 6, 2016. At the close of that status conference, I indicated that

[t]his case will be administratively closed pending a Trial Readiness Conference in the criminal case set for February 16, 2017. Parties shall file Status Reports by February 23, 2017. If Ms. Wodiuk's criminal attorney moves to vacate the Trial Readiness Conference, [Ms. Graziano's attorney] may renew his request to depose Ms. Wodiuk.

*See* Courtroom Minutes/Minute Order (doc. #194).

On February 2, 2017, the Pueblo County District Court entered a new Order finding that Ms. Wodiuk was "incompetent to proceed" in the criminal case, and directing Ms. Wodiuk to arrange "any needed services to restore [her] to competency."[17] That Order prompted Ms. Wodiuk on February 15, 2017 to file in this case a letter (doc. #200) she sent to the CMHIP

---

[17]If a criminal defendant deemed incompetent to proceed is released on bond, the court may require that the defendant, as condition of release, "obtain any treatment or rehabilitation services that are available to the defendant, such as inpatient or outpatient treatment at a community mental health center or in any other appropriate treatment setting." *See* Colo. Rev. Stat. § 16-8.5-111(2)(a). Where a court determines that a defendant remains incompetent to proceed, "the court may continue or modify any orders entered at the time of the original determination of incompetency, and may commit or recommit the defendant or enter any new order necessary to facilitate the defendant's restoration to mental competency." *See* Colo. Rev. Stat. § 16-8.5-114(2).

Court Services Department challenging the competency evaluations performed by Nicole Glover and Alison Kennedy. Also on February 15, 2017, Ms. Wodiuk filed a "Notice of: Case 15CR1287 Status" (doc. #199). Plaintiff acknowledged the Pueblo County District Court's Order of February 2, 2017, but insisted that the "competency evaluator" Dr. Nicole Glover

> acted in Crimen Falsi acts in poisonous fruit crimes with evidence obtained illegally and without warrants and the evidence obtain in the poisonous fruit act is all outside the pueblo district courts subject jurisdiction. Dr. Nicole Glover then in perjury, fabricated facts to kangarooize the trial courts and taint Dr. Wodiuks character and ability to stand trial in crimin rae acts done in intentional malicious malpractice. . . . Judge William Alexander the trial judge in 15CR1287 stated on record on February 2, 2017 that Dr. Wodiuk would be held to 98 years at maximum prison in CMHIP facility if Dr. Wodiuk does NOT cooperate with life threatening medications, evaluations, treatment etc of which do not meet competency criteria of laws or constitution due process procedures met first before forcing medications and psychological treatment for FACTS about Dr. Wodiuk's life because the evaluator Dr. Nicole Glover failed her obligations to properly investigate and protect Dr. Wodiuk's rights first. . . . Therefore, as it stands case 15CR1287 is on hold due to unlawful and unconstitutional competency hold and therefore, this too is to be held on hold as well. I apologize for the delay as I -Dr. Wodiuk am wanting this case resolved as much as the Respondent. However, I-Dr. Wodiuk do appreciate the Respondent and the courts understanding in this complex judicial color of law and constitutional dilemma.

On April 28, 2017, the Pueblo County District Court entered another "Order Finding Defendant Incompetent to Proceed and Allowing Continuing On-Bond Status." This Order directed Ms. Wodiuk to arrange "any needed services to restore the Defendant to competency," and encouraged Ms. Wodiuk "to seek on her own whatever restoration services she believes will be beneficial to her." With no trial date looming, the Pueblo County District Court has set a review of Ms. Wodiuk's competency for July 28, 2017.

B.    Rule 41(b)

It is well-established that a court has the inherent authority to manage its civil docket with an eye toward the orderly and expeditious disposition of cases.  *See, e.g., Bettis v. Toys "R" US-Delaware, Inc.*, 273 F. App'x 814, 818 (11th Cir. 2008) ("The district court possesses the inherent power to police its docket.") (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629-30 (1962)).  *Cf. Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (recognizing "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants," but also warning that this "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance").  Dismissal with prejudice under Rule 41(b) is, however, an "extreme sanction" that should be employed only in "rare circumstances" and in "cases of willful misconduct."[18]  *Hose v. Henry Indus., Inc.*, No. 13-2490-JTM, 2016 WL 274879, at *3 (D. Kan. Jan. 22, 2016).  *Cf. Allen v. Equifax*, No. 06-cv-02591-PSF-CBS, 2007 WL 2683535, at *4 (D. Colo. Sept. 7, 2007) (acknowledging that dismissal with prejudice is appropriate "only when the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits") (quoting *EBI Sec. Corp., Inc. v. Hamouth*, 219 F.R.D. 642, 647 (D. Colo. 2004)).

---

[18]Dismissal "without prejudice" would be a misnomer in this case, because Ms. Wodiuk's attempt to re-assert this lawsuit after her criminal case concludes might be precluded by the statute of limitations applicable in an action brought under 42 U.S.C. § 1983.  *See Workman v. Jordan*, 32 F.3d 475, 482 (10th Cir. 1994) (holding that Colorado's two-year limitations period applies to actions brought under 42 U.S.C. § 1983).  *Cf. Nasious v. City & Cty. of Denver*, No. 08-cv-00275-ZLW-KMT, 2010 WL 330223, at *6 (D. Colo. Jan. 20, 2010) (finding that the dismissal of the plaintiff's previous action under § 1983 did not operate to toll the statute of limitations during the pendency of the dismissed action); *AdvantEdge Bus. Grp. L.L.C. v. Thomas E. Mestmaker & Assocs., Inc.*, 552 F.3d 1233, 1236 (10th Cir. 2009) (recognizing that "a dismissal without prejudice can have the practical effect of a dismissal with prejudice if the statute of limitations has expired").

A district court may dismiss an action under Rule 41(b) after finding that certain enumerated criteria support a dismissal. These criteria include "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal would be likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."

*Olsen v. Mapes*, 333 F.3d 1199, 1204 (10th Cir. 2003). When the court considers Defendant's requested relief in light of the foregoing factors, I conclude that dismissal with prejudice under Rule 41(b) is not appropriate.

As to the first factor, "the degree of actual prejudice to the defendant," there is no question that Defendant Graziano has been subjected to prolonged delay through no fault of her own. Nearly a year has passed since the court first administratively closed this case, and still no resolution of Ms. Wodiuk's criminal case is in sight. As the Ninth Circuit acknowledged in *Davis v. Walker*, 745 F.3d 1303 (9th Cir. 2014), a lengthy or indefinite stay of a civil lawsuit has potentially adverse consequences.

Such an indefinite delay amounts to a refusal to proceed to a disposition on the merits. Even if litigation may eventually resume, such stays create a danger of denying justice by delay. Delay inherently increases the risks that witnesses' memories will fade and evidence will become stale.

*Id.* at 1308-09 (quoting *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007)). This court cannot discount the frequently cited adage that "justice delayed is justice denied." *See Sanchez v. Hartley*, No. 13-cv-01945-WJM-CBS, 2016 WL 7176718, at *7 (D. Colo. Apr. 26, 2016). *Cf. Zukowski v. Howard, Needles, Tammen, and Bergendoff*, 115 F.R.D. 53, 58 (D. Colo. 1987) (rejecting any notion "that time and justice are unrelated").

Yet, I believe that Ms. Wodiuk has an equally strong desire for a "just, speedy, and

inexpensive" resolution of this civil action. *See* Fed. R. Civ. P. 1 (requiring the court and the parties to construe, administer and employ the Federal Rules of Civil Procedure "to secure the just, speedy, and inexpensive determination of every action and proceeding"). In the end, the court must strike an appropriate balance between just *and* speedy *and* inexpensive. *Cf. Hunter v. Hamilton Cty.*, No. 1:15-cv-540, 2015 WL 12999662, at *4 (S.D. Ohio Dec. 23, 2015) ("While defendants argue that the risk to their reputations from remaining defendants in plaintiff's lawsuit prejudices them, the [court] finds that the possibility of any such reputational harm is minimal compared to the gravity of plaintiff's upcoming criminal trial. * * * The [court] concludes that while it is in the interests of the Court and the public to have claims resolved expeditiously, this interest does not outweigh the factors . . . that weigh in favor of a stay.").

I do not find that Officer Graziano has suffered a "degree of actual prejudice" that would justify imposition of an extreme sanction. While memories are likely to fade with the passage of time, Defense counsel has not demonstrated an inability to discover relevant facts surrounding the events at the Kohl's Department Store parking lot. Counsel questioned Ms. Wodiuk at length during her deposition in 2015 and obtained Plaintiff's detailed account of what occurred during her interaction with Officer Graziano. Indeed, save for the possibility of re-opening Ms. Wodiuk's deposition to address a limited number of topics (which may or may not be relevant to Plaintiff's alleged damages), defense counsel appears to have completed discovery directed to issues of liability.

Finally, I am aware that Defendant Graziano raised the defense of qualified immunity in her Answer (doc. #10) to Plaintiff's Complaint. The doctrine of qualified immunity provides "an immunity from suit rather than a mere defense to liability." "For this reason . . . qualified

19

immunity questions should be resolved at the earliest possible stage of a litigation." *Aurelio v. South*, No. 15-cv-1540-WJM-CBS, 2016 WL 8542534, at *2 (D. Colo. May 16, 2016) (quoting *Anderson v. Creighton,* 483 U.S. 635, 646 n. 6 (1987)). Unfortunately, protracted delay in this case attributable to Ms. Wodiuk's criminal case does have the unintended effect of compromising the objectives underlying the qualified immunity doctrine. That consequence does not, however, justify the extreme sanction of dismissal with prejudice, particularly if defense counsel is afforded an opportunity to raise that affirmative defense in a motion for summary judgment. On balance, while Defendant's right to an expeditious disposition of this case has been adversely impacted through no fault of her own, Ms. Graziano's ability to litigate the merits of her case has not been substantially prejudiced.

Similarly, I cannot find that delay is the result of wilful misconduct on the part of Ms. Wodiuk. The withdrawal of Plaintiff's original counsel was a complicating factor, but without knowing all of the circumstances that prompted counsel's motion, this court is not prepared to ascribe any wrongful motive to Ms. Wodiuk. Certainly, Plaintiff cannot be faulted for her second counsel's bicycle accident and resulting motion to withdraw. Although the Pueblo County District Court's competency findings have delayed the criminal case (and this case indirectly), Ms. Wodiuk has challenged the findings of the CHMIP evaluators.[19] I find this factor under Rule 41(b) weighs in Ms. Wodiuk's favor. It further bears noting that Ms. Wodiuk

---

[19]This court does not know whether Ms. Wodiuk and/or her criminal defense counsel has asked for a second competency evaluation by an evaluator of Ms. Wodiuk's choice pursuant to Colo. Rev. Stat. § 16-8.5-106 (providing that if a defendant wishes to be examined by a competency evaluator of his or her own choice, the state court "upon timely motion, shall order that the competency evaluator chosen by the defendant be given reasonable opportunity to conduct the second evaluation, in accordance with sections 16-8.5-103 and 16-8.5-111").

has never been put on notice that this case could be dismissed with prejudice for failure to prosecute.

In exercising its discretion under Rule 41(b), the court should also consider whether, and to what extent, the lack of diligent prosecution has adversely impacted the judicial process. Ms. Wodiuk stands on much weaker ground as to this factor. On June 23, 2016, I administratively closed this case in light of actions taken in the criminal case regarding Ms. Wodiuk's competence to proceed and Mr. Glanz's limited access to his client. *See* Courtroom Minutes/Minute Order (doc. #156). On December 6, 2016, this court continued, at Ms. Wodiuk's request, the administrative closure of this case pending the disposition of her criminal case, subject to the caveat that the parties could not file any motions, except motions to re-open the case. *See* Courtroom Minutes/Minute Order (doc. # 194). However, even as this case remains administratively closed (both to protect Ms. Wodiuk's rights vis-a-vis her criminal case and to facilitate the court's management of its docket), Ms. Wodiuk has inundated the United States District Court with frivolous filings that directly implicate her criminal case and status as a criminal defendant.

On April 25, 2016, Ms. Wodiuk filed in the United States District Court an action captioned, *Wodiuk v. People of Colorado*, Civil Action No. 16-cv-00983-LTB. In that case, Ms. Wodiuk sought a writ of habeas corpus challenging the legality of her confinement in the criminal case. Ms. Wodiuk argued that her criminal case and related pretrial custody was malicious and predicated on certain procedural and investigative irregularities that provided "unconstitution (sic) grounds for just cause in good faith for the U.S. District Courts to intervene and protect Dr. Wodiuk['s] rights." *See* Civ. 16-983, doc. 1. On May 31, 2016, in the same

case, Ms. Wodiuk filed another "Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241" (doc. #18) in which she sought the dismissal of her criminal case. Ms. Wodiuk asked that the federal court "file with FBI" criminal charges against Judge David Crockenberg, Assistant District Attorney Kalalee Beauvais, Assistant State Defender Samantha Bloodworth, and various members of the Pueblo County Sheriff's Department for conspiring against her and charging her with criminal violations. Ms. Wodiuk further directed the United States District Court to notify the Secret Service immediately of an alleged threat against President Obama.

On August 16, 2016, Senior Judge Babcock entered an Order of Dismissal (doc. #37) in *Wodiuk v. People of Colorado*, Civil Action No. 16-cv-00983-LTB. Senior Judge Babcock noted that in her Application, Ms. Wodiuk discussed at length "the alleged basis for the state criminal proceeding that has been filed against her and the related psychological evaluations that have been conducted to determine her competency." The district court explained that "[a]bsent extraordinary or special circumstances, federal courts are prohibited from interfering with ongoing state criminal proceedings." *Id.* at page 4 of 9. Because Ms. Wodiuk had "failed to demonstrate extraordinary circumstances," the district court "abstain[ed] from exercising jurisdiction over the Application." Senior Judge Babcock concluded that "the instant case will be dismissed because [Ms. Wodiuk] is subject to a criminal proceeding and she fails to allege facts that indicate she will suffer great and immediate irreparable injury if the Court does not intervene in the ongoing state court criminal proceeding." *Id.* at pages 7-8 of 9.

Since Senior Judge Babcock dismissed Civil Action No. 16-cv-00983-LTB, Ms. Wodiuk has filed no less than 17 post-judgment submissions in that case. For example, on August 24, 2016, Ms. Wodiuk filed a paper styled "Misuse of Process: Sedition Acts Judicial Treats (sic) to

Dr. Wodiuk" (doc. #51). In this submission, Ms. Wodiuk accused Senior Judge Babcock of "aiding and abetting domestic terrorism" and committing "a serious crime not only against Dr. Wodiuk but Barack Obama and the USA," by failing to "release her from malicious detainment and malicious prosecutions." On the same day, Ms. Wodiuk filed a "Response to: Order of Dismissal August 16, 2016 filed by Judge Babcock" (doc. #53). Once again, Ms. Wodiuk accused the district judge of failing to enforce her federal rights and discharging his "obligatory mandated duty to intervene" when a state court acts "to prosecute charges outside their jurisdiction." Ms. Wodiuk asked whether Senior Judge Babcock was "on drugs cause this case is black and white obvious." Ms. Wodiuk concluded by asserting that judges in the United States District Court "are now accessors to Grand Treason." On August 30, 2016, Ms. Wodiuk filed a "Habeas Corpus Right to Release for Criminal Pro Se Litigants - Entitled by Law and Constitution Rights" (doc. #56). Ms. Wodiuk insisted that she was entitled to immediate release from custody in her criminal case and that "depriving this right by a federal court is treason of sedition a serious crime against America of infringement of fundamental constitutional rights." Ms. Wodiuk renewed the aforementioned arguments in her "Writ of Habeas Corpus: Dismiss on Canon 4 Violation, Sedition Act" (doc. #58). Once again, Ms. Wodiuk accused Senior Judge Babcock of acting "in conspired organized domestic terrorism acts against the USA, President Barack Obama, and refused to report its claims so to protect the President, as well as failed to investigate, intervene and indict Dr. Wodiuk to U.S. Supreme Court for it." On November 3, 2016, Ms. Wodiuk filed an "Invoice of Pro Se Litigation Fees - The US Colorado Federal Courts Must Pay Dr. Wodiuk Litigation Fees in this Case" (doc. #66). In this filing, Ms. Wodiuk argued that by aiding "domestic terrorism denying to intervene in malicious prosecutions,

wrongful detainments, court ordered murder attempts, inhabitable detainment facilities, deprivation of inalienable rights and human rights," this district court is liable and accountable for Ms. Wodiuk's litigation fees and costs, and damages, "due to the courts willful, conscious, malicious aiding and abetting" her state criminal case.

Most recently, on May 18, 2016, Ms. Wodiuk filed in Civil Action No. 16-cv-00983-LTB, a "Motion for: Contempt of Court Ex Parte Crimes to be Motions in Reporting to FBI, the US Judicial Discipline Board and the United States President Donald Trump Today for the Prohibited Crimes Done in Ex Parte" (doc. #75). In this motion, Ms. Wodiuk accuses Senior Judge Babcock and Magistrate Judge Gordon Gallagher of engaging in ex parte crimes

> to using their seat of office to commit Domestic Terrorism of Genocide in Sherman Act crimes for national economy in unlawful taking, which is all prohibited by law as under the war laws and treaties to hold order over the people by judicial law it is illegal to levy war by the use of Hitler crimes by use of the courts as such done in the cases against Dr. Heidi Wodiuk her child and the case witnesses as too many other parties in many other cases.

*Id.*

On February 22, 2017, Ms. Wodiuk filed in the United States District Court a new action styled "Petition for Writ of Certiorari for Trial Court Case 15CR1287 in Pueblo Colorado" (doc. #1). *See Dr. Heidi Wodiuk v. People of Colorado*, Civil Action No. 17-cv-00223-LTB. In this case, Ms. Wodiuk was requesting "federal court intervention into the unconstitutional trial court case 15CR1278 heard outside of the state trial courts subject matter jurisdiction." More specifically, Ms. Wodiuk requested "federal intervention to dismiss and over throw all unlawful acts, proceedings, hearings and orders made in sedition in state trial court 15CR1287, 2007DR1166, 1967CV17664 . . . as they are acts of treason and by treaties deemed levy for war acts." On March 24, 2017, Senior Judge Babcock dismissed this action for failure to cure noted

deficiencies in her initial papers. *See* Civ. 17-223, doc. #6. Ms. Wodiuk again was reminded that "certiorari review of a state court decision more properly is filed in the United States Supreme Court," and warned once again that the district court "may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process." *Id.* In response to Senior Judge Babcock's Order of Dismissal, Ms. Wodiuk filed on April 4, 2017 a "Post Judgment Relief to Bias, Prejudice, Discrimination, Treason Judgment" (doc. # 8) in which she accused Senior Judge Babcock of "ruling and judging in this case in a bias, prejudice, discrimination crime against Dr. Wodiuk in treason to GRAND TREASON TO KIDNAPPING of Dr. Wodiuk's child . . . and kidnapping of Dr. Heidi Wodiuk as noted in the writ of certiorari filings."

In short, while Ms. Wodiuk wishes to stay this civil lawsuit indefinitely in deference to her criminal case, she has submitted public filings that discuss the facts and circumstances of that case as justification for the federal district court's intervention in that proceeding. Ms. Wodiuk should not be permitted to use her criminal case as both a sword and a shield to advance her interests; particularly when that strategy plainly subjects this district court to frivolous filings.

Finally, the court should consider the efficacy of some remedy, short of dismissal with prejudice, that will properly balance the competing interests of Ms. Wodiuk and Ms. Graziano. This factor requires the court to address the interplay between Ms. Wodiuk's civil and criminal cases.

### 1. *Ms. Wodiuk's Fifth Amendment Rights*

In the past, this court has expressed its desire to protect Ms. Wodiuk's Fifth Amendment rights given her pending criminal case. However, Ms. Wodiuk's Fifth Amendment rights are not

absolute and do not automatically preclude this case from proceeding. Under the Fifth

Amendment, "[n]o person . . . shall be compelled in any criminal case to be a witness against

himself," and this guaranteed right to remain silent continues "unless [that person] chooses to

speak in the unfettered exercise of his own will." *Schmerber v. California*, 384 U.S. 757, 760-61

(1966). As the Supreme Court noted in *Colorado v. Spring*, 479 U.S. 564, 573 (1987), a person

can waive their Fifth Amendment rights if they do so voluntarily, knowingly, and intelligently.

"Waiver is voluntary if it is the 'product of a free and deliberate choice,' rather than intimidation,

coercion, or deception, and it is knowing and intelligent if it is done with 'full awareness . . . of

the right being abandoned and the consequences of the decision to abandon it.'" *United States v.

Smith*, 821 F.3d 1293, 1304 (11th Cir. 2016) (quoting *Spring*, 479 U.S. at 573). "[I]f the witness

himself elects to waive his privilege as he may doubtless do, since the privilege is for his

protection and not for that other parties, . . . he is not permitted to stop, but must go on and make

a full disclosure." *Rogers v. United States*, 340 U.S. 367, 373 (1951) ("[d]isclosure of a fact

waives the privilege as to details"). *See also Klein v. Harris*, 667 F.2d 274, 278 (2d Cir. 1981)

("There is no doubt that a waiver of the fifth amendment's privilege against self-incrimination

may, in an appropriate case, be inferred from a witness' prior statements with respect to the

subject matter of the case, without any inquiry into whether the witness, when he made the

statements, actually knew of the existence of the privilege and consciously chose to waive it.").

During her deposition on June 4, 2015, Ms. Wodiuk and her counsel had no reluctance to

protect Plaintiff's Fifth Amendment rights and privacy interests. So, for example, when defense

counsel asked to whom Ms. Wodiuk was "currently engaged," she responded: "I'm not

supposed to speak of anything of my personal life right now because its being investigated in

another crime, in another case." Mr. Viorst also instructed Ms. Wodiuk not to answer when she

was asked who gave her the engagement ring she was wearing, and earlier in the deposition

when she was asked who might be the father of Ms. Wodiuk's minor child.  In response to the

latter question, Ms. Wodiuk responded that she was "not supposed to discuss anything at this

time right now as there is an investigation in the case going."  In contrast, Ms. Wodiuk discussed

at length the events in the Kohl's Department Store parking lot and her interactions with

Defendant Graziano, without any objection from her counsel or invocation of the Fifth

Amendment.[20]  Ms. Wodiuk only asserted her Fifth Amendment right to remain silent when she

was asked about her rental properties and Mr. Franti's name on quitclaim deeds.[21]  Yet, Ms.

Wodiuk also asserted that any real estate issues involving Mr. Franti are "irrelevant to me getting

beat up."[22]  If Ms. Wodiuk has voluntarily waived her Fifth Amendment rights, in whole or in

part, Ms. Graziano should not be precluded from moving this case forward.

"The Constitution [ ] does not ordinarily require a stay of civil proceedings pending the

---

[20]*Cf. Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, 385 F.3d 72, 78 (1st Cir. 2004)
(in upholding the trial court's decision to deny defendant's motion to stay notwithstanding a
pending criminal investigation, the appellate court observed that "choices have consequences"
and that by freely giving lengthy deposition testimony regarding facts relevant to plaintiff's civil
claims and failing to invoke his Fifth Amendment privilege, defendant "likely waived the
privilege with respect to the subject matter of his deposition testimony for the duration of the
proceeding in which that testimony was given").

[21]Although Ms. Wodiuk declined to answer questions regarding Mr. Franti and issues of
property ownership during her deposition on June 4, 2015, she volunteered information
regarding that same topic and also discussed facts concerning her state criminal charges in her
May 31, 2016 "Application for a Writ of Habeas Corpus" (doc. #18) filed in *Wodiuk v. People of
Colorado*, Civil Action No. 16-cv-00983-LTB.

[22]It should be noted that the claims asserted in this action by Ms. Wodiuk involve events
that occurred on either July 22, 2012 or 2013.  The felony charges in Ms. Wodiuk's criminal
case involve conduct that allegedly occurred on or after January 1, 2015.

outcome of criminal proceedings," *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1375 (D.C. Cir. 1980) (citing *Baxter v. Palmigiano*, 425 U.S. 308, 317-19 (1976)), and "a civil plaintiff has no absolute right to both his silence and his lawsuit." *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084, 1088 (5th Cir. 1979). "While it may be true that an individual should suffer no penalty for the assertion of a constitutional right, neither should third parties sued by that individual who have no apparent interest in the criminal prosecution, be placed at a disadvantage thereby." *Id.* at 1088 (quoting *Jones v. B.C. Christopher & Co.*, 466 F. Supp. 213, 227 (D. Kan. 1979)). Accordingly, "courts have recognized that a stay may be appropriate to avoid requiring a plaintiff 'to choose between his silence and his lawsuit,' so long as it does not impose undue hardship on the defendants." *DeAtley v. Allard*, No. 14-cv-00100-RM-KMT, 2014 WL 1258170, at *2 (D. Colo. Mar. 27, 2014).

> In determining whether to stay civil proceedings, courts balance the burden of proceeding with both cases simultaneously against the harm to the civil opponent, in this case the defendants, if a stay was granted. A motion for stay entails a case-by-case, fact-specific inquiry, with courts frequently citing some combination of six factors in determining whether to enter a civil stay: (1) the extent to which the issues in the criminal case overlap with those presented in the civil case; (2) the status of the [criminal] case, including whether the plaintiff has been indicted; (3) the interests of the defendants in proceeding expeditiously weighed against the prejudice to the plaintiff caused by the delay; (4) the private interests of and burden on the defendants; (5) the interests of the courts; and (6) the public interest.

*Id. Cf. SEC v. McGinnis*, 161 F. Supp. 3d 318, 321-22 (D. Vt. 2016) (noting that "a stay of a civil case to permit conclusion of a related criminal prosecution has been characterized as an extraordinary remedy" and should reflect "the district court's studied judgment as to whether the civil action should be stayed based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court").

Here, the court has not been provided with any facts that would demonstrate, or even suggest, that the central facts and issues in Ms. Wodiuk's civil and criminal cases are identical or involve overlapping proofs. As noted, Ms. Wodiuk's alleged criminal offenses occurred in 2015 and involved activities directed toward or affecting Mr. Franti. Ms. Wodiuk's civil claims assert constitutional violations of the Fourth Amendment and involve only Ms. Graziano. The elements that the State of Colorado must prove beyond a reasonable doubt to establish Ms. Wodiuk's guilt in the criminal case are entirely distinct from the elements of the Fourth Amendment violations that Ms. Wodiuk must prove by a preponderance of the evidence to prevail in this civil case. While there may be some factual overlap between the damages that Ms. Wodiuk claims were caused by Defendant Graziano's conduct in the Kohls Department Store parking lot and certain events in 2015, that does not necessarily require a complete stay of this case; particularly given that most of the fact-based discovery relevant to this case already has occurred.

2. *Ms. Wodiuk's Competence to Proceed*

But even if Defendant Graziano might have a viable motion for summary judgment that can be pursued without compromising Plaintiff's Fifth Amendment rights, the court cannot dispose of any of Ms. Wodiuk's claims on the merits if she is an incompetent person entitled to the protections of Rule 17(c)(2) of the Federal Rules of Civil Procedure. *Cf. Mil'chamot v. N.Y. City Hous. Auth.*, No. 15 Civ. 108 (PAE), 2016 WL 659108, at *3 (S.D.N.Y. Feb. 16, 2016). *See also Jurgens v. Dudendorf*, No. 2:14-cv-02780 KJM DAD, 2015 WL 4910536, at *5 (E.D. Cal. Aug. 17, 2015) (recognizing that the court is under a legal obligation to consider whether a litigant is adequately protected) (citing *United States v. 30.64 Acres of Land*, 795 F.2d 796, 805

(9th Cir. 1986)).

Rule 17(a) states that "[t]he court must appoint a guardian ad litem – or issue another appropriate order – to protect a minor or incompetent person who is unrepresented in an action."[23]  Thus, the court's analysis focuses on the following issues:  first, is Ms. Wodiuk "incompetent" for purposes of Rule 17(c)(2); and second, what due process considerations are implicated by the application of that rule and the appointment of a guardian ad litem?

The Tenth Circuit has held that the phrase "incompetent person" in Rule 17(c)(2) refers "to a person without the capacity to litigate under the law of his state of domicile."  *Graham v. Teller Cty., Colo.*, 632 F. App'x 461, 465 (10th Cir. 2015).  In *People in the Interest of M.M.*, 726 P.2d 1108, 1117 (Colo. 1986), the Colorado Supreme Court acknowledged that there are a wide variety of mental disabilities, not all of which render a person legally incompetent to sue or be sued.  However, the Colorado Supreme Court recognized that "it is proper for a court to appoint a guardian ad litem for a litigant when the court is reasonably convinced that the party is not mentally competent to effectively participate in the proceeding."  *Id.* at 1118.  Turning specifically to Colorado Rule of Civil Procedure 17(c), the Colorado Supreme Court observed:

> While the term "incompetent person" in C.R.C.P. 17(c) is certainly broad enough to encompass statutory definitions of "mentally ill" and "gravely disabled" in [Colo. Rev. Stat.] section 27-10-102, we are satisfied that the term also includes those who, although not ill to the extent of satisfying those statutory criteria, are nonetheless mentally impaired to the degree of being incapable of effectively participating in a . . . . proceeding and thus need the assistance of a fiduciary representative.

---

[23]Rule 17(c) of the Colorado Rules of Civil Procedure states, in pertinent part, that "[t]he court shall appoint a guardian ad litem for an infant or incompetent person not otherwise represented in an action or shall make such other order as it deems proper for the protection of the infant or incompetent person."

*Id.* at 1119.

Rule 17(c)(2) may be implicated in circumstances that do not fall easily along a bright-line standard. A court is not required to make a *sua sponte* determination of mental competence simply because a *pro se* litigant is demonstrating bizarre behavior that *might* suggest mental incapacity. *See, e.g., Jackson v. Pa. Dep't of Corr.*, No. 14-1604, 2015 WL 1201359, at *1 (W.D. Pa. Mar. 16, 2015) (finding that the plaintiff was competent and that a Rule 17(c)(2) hearing was not required because the plaintiff's past filings demonstrated that he was "sufficiently articulate and capable of appropriate legal argument," and there was no evidence that the plaintiff had been adjudicated incompetent by any court).[24] It is also true that Rule 17(c)(2)

> contemplates by "incompetence" something other than mere foolishness or improvidence, garden-variety or even egregious mendacity, or even various forms of the more common personality disorders. What the rule undoubtedly contemplates is that form of mental deficiency which – whether or not accompanied by other forms of personality disorder – affects the person's practical ability "to manage his or her own affairs."

*Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986) (recognizing the real possibility that "a presumably competent party might be thought to be acting oddly, or foolishly, or self-destructively in prosecuting or defending a civil lawsuit" and asking "whether and at what point any duty devolves upon a court to initiate specific inquiry into whether these surface

---

[24]Ms. Wodiuk's recent filings in this and other cases do not demonstrate an ability to present coherent arguments or incorporate relevant legal precedents. *Compare Hartmann v. Carroll,* 882 F. Supp. 2d 742, 746-47 (D. Del. 2012) (in denying the plaintiff's request for appointment of a guardian ad litem, the court noted that the plaintiff's discovery responses "demonstrate an impressive ability to organize his points, make rational arguments, and cite supporting legal authority;" the court also acknowledged the plaintiff's demonstrable "ability to understand the relevant law and file cases in his behalf" and present filings "that are logical and coherent and demonstrate [the plaintiff's] ability to understand court rules").

manifestations suggest that the party might be 'incompetent' in fact").  *See also Maynard v. Casebolt*, 221 F.3d 1352 (Table), 2000 WL 1005265 (10th Cir. 2000) (unpublished opinion; citing *Hudnall* with favor).  The relevant inquiry under Rule 17(c)(2) is "whether the litigant is 'mentally competent to understand the nature and effect of the litigation she has instituted." *Scannavino v. Fla. Dep't of Corr.*, 242 F.R.D. 662, 664 (M.D. Fla. 2007) (recognizing that "[b]ecause '[a] person may be competent to make some decisions but not others,' the test of a party's competency 'varies from one context to another'").

The Second Circuit Court of Appeals has suggested that while a court is not required "to conduct a *sua sponte* inquiry into a litigant's competency when he or she demonstratives signs of incapacity,"

> The obligation imposed by the final sentence of Rule 17(c) – the duty to "appoint" or "make such other order"– arises after a determination of incompetency.  If a court were presented with evidence from an appropriate court of record or a relevant public agency indicating that the party had been adjudicated incompetent, or if the court received verifiable evidence from a mental health professional demonstrating that the party is being or has been treated for mental illness of the type that would render him or her legally incompetent, it likely would be an abuse of the court's discretion not to consider whether Rule 17(c) applied.

*Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 201 (2d Cir. 2003).  However, the Second Circuit also recognized that nothing in Rule 17(c)(2) "*prevents* a district court from exercising its discretion to consider *sua sponte* the appropriateness of appointing a guardian ad litem for a litigant whose behavior raises a significant question regarding his or her mental competency."  *Id.* at 203 (emphasis in original).  *Cf. Gibson v. Hagerty Ins. Agency*, No. 1:16-cv-00677-DAD-BAM*, 2017 WL 1022792, at *2-3 (E.D. Cal. Mar. 16, 2017) (suggesting that an exercise of discretion under Rule 17(c)(2) should be guided by evidence that speaks "to the

court's concern as to whether the person in question is able to meaningfully take part in the proceedings").

The circumstances presented in this case bear a striking resemblance to those in *Sturdza v. United Arab Emirates*, 644 F. Supp. 2d 50 (D.D.C. 2009), *aff'd*, No. 06-7061, 2009 WL 5125239 (D.C. Cir. Dec. 17, 2009) (unpublished, per curiam). In that case, the court appointed a guardian ad litem for the plaintiff based on the "entire record of this case" including the *pro se* plaintiff's own presentations to the court, and after determining that she was not "'capable of making responsible decisions concerning the pending litigation' because she is irrational regarding this case." The district judge acknowledged that he would have preferred to base his decision on a mental health professional's opinion regarding the plaintiff's 'competency, but that was not possible as the plaintiff refused to permit an evaluation to be performed.

> [I]n assessing [the plaintiff's] opposition to the Guardian ad Litem Motion, it is apparent that [her] resistence is inextricably intertwined with her view of the merits of her case, as well as her suspicion that everyone involved in this case . . . are wrongdoers who, either deliberately or unwittingly, are standing in the way of her effort to gain a monetary recovery that will compensate her justly for being unfairly and grievously deprived of an opportunity of a lifetime. . . . And what makes matters worse is [the plaintiff's] suspicion that this Court, the D.C. Circuit, and her lawyers are working together to undermine her case[.]

*Id.* at 75-77. Ms. Wodiuk seems to labor under the same belief.

In exercising my discretion under Rule 17(c)(2), I remain mindful of Ms Wodiuk's due process rights. Unfortunately, there is a dearth of Tenth Circuit precedent on that issue. "A litigant has a liberty interest in avoiding the stigma of being found incompetent and in retaining personal control over litigation." *Laney v. Schneider Nat'l Carriers, Inc.*, No. 09-CV-389-TCK-FHM, 2011 WL 13096625, at *3 (N.D. Okla. Mar. 29, 2011), *report and rec. adopted,* 2011 WL 13096626 (N.D. Okla. Apr. 27, 2011). However, a formal, evidentiary hearing is not required in

every case before a trial court may appoint a guardian ad litem because such a requirement "would consume a significant amount of judicial resources, cause delay, and accomplish little." *Cf.  Neilson v. Colgate-Palmolive Co.*, 199 F.3d 642, 651, 654 (2d Cir. 1999) (noting that "[d]ue process is flexible and calls for such procedural protections as the particular situation demands") (quoting *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).  *See also Neilson*, 199 F.3d at 652 (holding that the trial court's failure to have an evidentiary hearing before appointing a guardian ad litem did not violate the plaintiff's due process rights "because of the availability of post-appointment review and because of [plaintiff's] questionable competence at the time the decision was made").

Addressing the due process constraints that attend a district court's exercise of discretion under Rule 17(c)(2), one appellate court has held that "[w]hen the party for whom the guardian is sought claims to be competent, at least 'some hearing' is required."  *Sturdza v. United Arab Emirates,* 562 F.3d 1186, 1188 (D.C. Cir. 2009).  "[A]lthough this need not always take the form of a 'full evidentiary hearing,' at a minimum it entails 'notice and an opportunity to be heard.'" *Id.*  When the district court originally appointed a guardian ad litem without a hearing, the D.C. Circuit held that the trial court should have first informed Ms. Sturdza that "in determining whether to appoint a guardian for her, 'it would . . . consider any failure on her part to comply or to submit to psychiatric evaluation" and "made clear to Ms. Sturdza that she could seek to dismiss her claim without prejudice if she wished to avoid either a psychiatric evaluation or the loss of control over her litigation."  *Sturdza*, 562 F.3d at 1189.  *Compare Bacon v. Mandell*, civ. No. 10-5506(JAP), 2012 WL 4105088, at *18 (D.N.J. Sept. 14, 2012) (requiring the plaintiff "to show cause as to why he shall remain the master of his claims" and warning that a guardian ad

litem would be appointed if the plaintiff failed to demonstrate the requisite competence to proceed).

In light of the foregoing legal authorities, and after thoroughly reviewing the files in this action and Ms. Wodiuk's submissions in other cases in the United States District Court, I believe that appointment of a guardian ad litem for Ms. Wodiuk is appropriate and necessary in this case to protect her interests. That conclusion is based on the Pueblo County District Court's various orders, one as recent as April 28, 2017, stating that Ms. Wodiuk was and is currently incompetent to proceed in her criminal case. The latter orders necessarily required a finding that Ms. Wodiuk was subject to a mental disability that prevents her from having "sufficient present ability to consult [with her defense counsel] with a reasonable degree of rational understanding in order to assist" her defense or, alternatively, that she "does not have a rational and factual understanding" of her criminal proceeding. My belief that Ms. Wodiuk requires a guardian ad litem is further based on a comparable decision entered by the Pueblo County District Court in *Pueblo Conservancy Dist. v. Pueblo West Metropolitan District*, Case No. 1967CV17664, as well as my own observations of Ms. Wodiuk during several hearings in this case.

I am aware that Ms. Wodiuk disputes the competency evaluations performed by staff members at the Colorado Mental Health Institute of Pueblo. *See* doc. #200. Ms. Wodiuk asserts that those staff members "willfully and ocnciously (sic) acted in malpractice acts," "conducted unconstitutional malicous (sic) evaluations on [her] in case 15CR1287," and "acted in conscious intent to harm [her] life, liberty and psychi for the state in extortion, entrapment and coercion acts." In another recent filing, Ms. Wodiuk contends that Dr. Nicole Glover "in perjury, fabricated facts to kangarooize the trial courts and taint Dr. Wodiuk's character and ability to

stand trial in crimin rae acts done in intentional malicious malpractice." *See* doc. #199. Given Ms. Wodiuk's pattern of making sweeping accusations against anyone and everyone she perceives as acting against her interests,[25] her conclusory attacks on staff members at CMHIP cannot be given much weight. In the end, my obligation is to fashion an "appropriate order" to protect Ms. Wodiuk's interests pursuant to Rule 17(c)(2).

Accordingly, I will stay entry of a Rule 17(c)(2) Order appointing a guardian ad litem for a period of forty-five (45) days. On or before June 19, 2017, Ms. Wodiuk must produce for this court's *in camera* review[26] copies of all written competency evaluations prepared for or at the direction of the Pueblo County District Court in connection with her criminal case.[27] At her election, Ms. Wodiuk may also produce *in camera*, on or before July 9, 2017, a competency evaluation prepared by a qualified medical or mental health professional of her choice. In light of those evaluations, the court will determine whether a guardian ad litem must be appointed pursuant to Rule 17(c)(2) or whether an evidentiary hearing should be held to further address

---

[25]For example, on December 19, 2016, Ms. Wodiuk filed in this action a "Notice Of: Cease and Desist Your Rico-Hitler Acts Now" (doc. #195) in which she accused "this court" of "acting in sedition and doing whatever they want based on [Acting United States Attorney Robert Troyer] movement in population control." This Notice states, without elaboration or explanation, that "the judges in the listed cases are aiding and abetting serious crimes against Dr. Heidi Wodiuk" and are "conspiring with Robert Troyer and others (names omitted at this time)."

[26]I am directing that these materials be submitted only to the court, and not to Ms. Graziano's counsel, out of an abundance of caution to protect Ms. Wodiuk's Fifth Amendment rights. In the event that an evidentiary hearing on competency is required, it may be necessary to disclose these materials to defense counsel in redacted form.

[27]Colorado Revised Statute § 16-8.5-105(4) provides that a written report of any competency evaluation shall be provided to counsel for the criminal defendant, and shall include a "description of the nature, content, extent and results of the evaluation and any tests conducted," a "diagnosis and prognosis of the defendant's mental disability," an "opinion as to whether the defendant suffers from a mental disability," and an "opinion as to whether the defendant is competent to proceed." *See* Colo. Rev. Stat. § 16-8.5-105(5).

Ms. Wodiuk's competency to proceed in this case. If Plaintiff fails to comply with the foregoing requirements, she should understand that the court may enter an Order appointing a guardian ad litem consistent with its authority under Rule 17(c)(2) or could dismiss this action for failure to comply with a court order.

III.    *Plaintiff's Motion for Contempt of Court Ex Parte Crimes*

As noted earlier, Ms. Wodiuk filed the foregoing motion on May 18, 2017, challenging the judicial officers assigned in Civil Action Nos. "14-cv-02931-CBS, 17cv943, 16cv983, 16cv02673, and 17cv00223." Without citing any factual support, Ms. Wodiuk contends that "the prohibited acts done by the judicial officers and the counsel attorney's at law in the mentioned cases above all partaking in ex parte communications to organize and conspire harm to Dr. Wodiuk and her child and all the cases witnesses in depriving justice in the ex parte obstruction of justice crimes conspired." This motion is denied as wholly frivolous.

Ms. Wodiuk does not identify the particular "ex parte communications" that she attributes to this specific judicial officer. Moreover, the legal authority that she cites in her motion appears to come from federal regulations governing proceedings before the Surface Transportation Board. *See* Ms. Wodiuk's "Motion for: Contempt of Court," at page 3 (referencing "47 FR 499548, Nov. 1, 2982 as amended at 58 FR 42047, Aug. 6, 1993; 74 FR 52905, Oct. 15, 2009; 81 FR 8853, Feb. 23, 2016"). As Senior Judge Babcock advised Ms. Wodiuk in other cases, even a *pro se* litigant does not have the right to abuse the judicial process by filing motions or other submissions that are wholly without factual or legal merit. Ms. Wodiuk's "Motion for Contempt" falls squarely within that category.

## CONCLUSION

For the reasons set forth above, the court hereby DENIES Plaintiff Heidi Wodiuk's "Motion for Appointment of Counsel in a Criminal Case" (doc. #197) and her "Motion for: Contempt of Court Ex Parte Crimes to be Motioned in Reporting to FBI, the US Judicial Discipline Board and the United States President Donald Trump Today for the Prohibited Crimes Done in Ex Parte" (doc. #208).  The court also DENIES Defendant Caitlin Graziano's "Motion to Dismiss for Failure to Prosecute" (doc. #201), finding that dismissal with prejudice is not warranted by the facts in this case.  However, the court remains mindful of my obligation to protect the legitimate interests of both parties and prompt the goals of Rule 1.  Accordingly, I am requiring that on or before June 19, 2017, Ms. Wodiuk must produce for this court's *in camera* review copies of all competency evaluations prepared for or at the direction of the Pueblo County District Court in connection with her criminal case.  If she wishes, Ms. Wodiuk may also produce *in camera*, on or before July 9, 2017, a competency evaluation prepared by a qualified medical or mental health professional of her choice.  In light of those evaluations, the court will determine whether a guardian ad litem must be appointed pursuant to Rule 17(c)(2) or whether an evidentiary hearing should be held to further address Ms. Wodiuk's competency to proceed in this case.  Once the court determines whether Ms. Wodiuk requires a guardian ad litem, the court will consider whether, and to what extent, this action should remain administratively closed.

### Advisement to the Parties

Within fourteen days after service of a copy of this Order, a party may serve and file written objections with the Clerk of the United States District Court for the District of Colorado. *See* 28 U.S.C. § 636(b)(1).  The district judge may consider timely objections and modify or set

aside any part of the magistrate judge's Order that is clearly erroneous or contrary to law.  *See*

Fed. R. Civ. P. 72(a).  A general objection that does not put the district judge on notice of the

basis for the objection may not preserve the objection for later review and failure to make timely

objections may bar a party from assigning as error a defect in the Order not timely objected to.

DATED this 6th day of June, 2017.

BY THE COURT:

*s/ Craig B. Shaffer*
United States Magistrate Judge