**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 14-cv-2931-WJM-SKC

HEIDI WODIUK,

     Plaintiff,

v.

CAITLIN GRAZIANO, individually and in her official capacity with the Pueblo County
Sheriff's Department,

     Defendant.

---

## ORDER GRANTING DEFENDANT'S RULE 41(b) MOTION TO DISMISS

---

     This is a civil rights action under 42 U.S.C. § 1983.  Plaintiff Heidi Wodiuk
("Wodiuk") sues Defendant Caitlin Graziano ("Graziano") for excessive force in violation
of the Fourth Amendment.

     This case was filed in October 2014.  From then until now, it has generated a
mostly uninterrupted series of brush fires, giving off heavy smoke but hardly any heat
(much less light).

     Currently before the Court is Graziano's Third Motion to Dismiss for Failure to
Prosecute ("Rule 41(b) Motion").  (ECF No. 418.)  For the reasons explained below, the
Court grants this motion and dismisses this case with prejudice.

### I. BACKGROUND

**A.    Proceedings While Wodiuk Was Represented by Mr. Viorst**

    1.   <u>Nature of the Complaint</u>

Wodiuk filed her original complaint—which remains the operative complaint—on

October 28, 2014.  (ECF No. 1.)  There, she alleges that Graziano, a Pueblo County Sheriff's Deputy, used excessive force when taking Wodiuk into custody on a mental health hold in a Kohl's parking lot on July 22, 2013.  (*Id.* ¶¶ 8–11.)

2.    Mr. Viorst's Motion to Withdraw

When the case was filed, Wodiuk was represented by an attorney, Mr. Anthony Viorst.  About eleven months later (September 16, 2015), Mr. Viorst moved to withdraw due to "irreconcilable differences" with Wodiuk ("Motion to Withdraw").  (ECF No. 19 at 1.)  The Court referred the Motion to Withdraw to the late U.S. Magistrate Judge Craig B. Shaffer.  (ECF No. 20.)  Judge Shaffer set a telephonic hearing for October 8, 2015.  (ECF No. 23.)

3.    Graziano's Motion for Continued Deposition

On September 23, 2015, Graziano filed a Motion for Continued Deposition of Plaintiff Heidi Wodiuk ("Motion for Continued Deposition").  (ECF No. 24.)  Graziano asserted that her counsel had deposed Wodiuk on June 4, 2015.  (*Id.* at 1.)  During the deposition, Graziano's counsel asked Wodiuk questions about the paternity of her child because one reason Wodiuk's family asked for a mental health hold was Wodiuk's recent claims that her child had been fathered by singer-songwriter and social activist Michael Franti.  (*Id.* at 4.)  Graziano's counsel deemed questions on this topic relevant "as *res gestae* regarding the reason why Defendant was in contact with Plaintiff in the first place," and because the matter "goes to Plaintiff's overall credibility . . . as Mr. Franti denies ever meeting Plaintiff, and many things in Plaintiff's life seem to focus on her 'relationship' with Mr. Franti."  (*Id.*)  However, as to these questions, Mr. Viorst instructed Wodiuk "to answer 'yes or no', without giving details."  (*Id.* at 3.)

In addition, Graziano's counsel attempted to question Wodiuk about rental

properties she claims to own. Wodiuk was "apparently claiming lost income and increased maintenance expenses on her many rental properties as a result of the alleged injuries which came from the incident with Defendant." (*Id.*) Wodiuk also claims to have recently transferred an ownership interest to Franti, allegedly for "mutual 'protection of assets'." (*Id.* at 3, 5.) Graziano's counsel pursued this line of questioning because he deemed it relevant to damages (*e.g.*, if Franti indeed owns a share in these rental properties, Wodiuk's damages in this regard may need to be reduced proportionally) and to credibility (if Franti does not own any shares in the rental properties). (*Id.* at 4–5.) Wodiuk, however, refused to answer most of these questions, purportedly on the advice of a different attorney. (*Id.* at 3.) Wodiuk said "there were potential criminal charges pending regarding the alleged transfer of the properties," and so she wanted her other attorney present. (*Id.*)

Graziano therefore requested leave to reopen Wodiuk's deposition to obtain answers on these topics. (*Id.* at 5–6.) The Court referred the motion to Judge Shaffer. (ECF No. 25.)

4. Wodiuk's Accusations Against Mr. Viorst

On October 6, 2015—two days before the hearing on the Motion to Withdraw—the Court received a filing from Wodiuk herself. (ECF No. 27.) The caption on the filing is as follows:[1]

> Notice: Plaintiff, notice is to notify the U.S. District Court of attorney failure to comply to federal court laws to do a proper investigation and to notify the courts of Tony Viorst extreme misconduct in deciving the plaintiff in this case and its

---

[1] This and all other quotations from Wodiuk's filings is verbatim, including spelling and grammatical errors, although the Court applies normal capitalization to passages that Wodiuk originally wrote in all-caps.

contents investigated, which were never done as required.

(*Id.* at 1.)  In the letter, Wodiuk consistently referred to herself as "Dr. Wodiuk" and

described herself as "a medical doctor."  (*Id.*)[2]  Describing the case in her own words,

Wodiuk said that it began with

> the grand treason to kidnapping of Dr. Wodiuk's daughter
> . . . on 7-22-2013 to be the bases of the 7-22-2013
> groundless, unjustified . . . mental health hold . . . as the
> premeditated organized crime contrived before arresting
> Dr. Wodiuk and using excessive force to try to establish
> Dr. Wodiuk to be a danger.

(*Id.* at 1–2.)  The letter then complained of various aspects of the incident that Mr. Viorst

had purportedly failed to investigate.  (*Id.*)  Wodiuk asked for "involvement to federal

agents at FBI can investigate," apparently meaning she wanted the FBI to investigate

Mr. Viorst's alleged misconduct.  (*Id.* at 1.)

     5.   <u>Judge Shaffer's Rulings</u>

Judge Shaffer held a hearing on the Motion to Withdraw on October 8, 2015, as

planned.  (ECF No. 29.)  Wodiuk did not object to Mr. Viorst's withdrawal, so Judge

Shaffer granted that motion and instructed Wodiuk that "she is *pro se* and is responsible

for meeting all deadlines and attending all hearings" until she can find replacement

counsel.  (*Id.* at 1.)

At the same hearing, Judge Shaffer granted Graziano's Motion for Continued

Deposition.  (*Id.* at 1.)  However, Judge Shaffer stayed all discovery pending a

November 10, 2015 hearing "to discuss the status of Ms. Wodiuk finding replacement

counsel."  (*Id.* at 2.)

---

[2] According to the Colorado Department of Regulatory Affairs license lookup tool
(https://apps.colorado.gov/dora/licensing/Lookup/LicenseLookup.aspx, last accessed Apr. 1,
2020) Wodiuk had an active acupuncture license at this time.  The license expired at the end of
2015.

**B.      Proceedings While Wodiuk Represented Herself**

1.      <u>Wodiuk's First Wave of Motions</u>

From October 14–28, 2015, Wodiuk submitted the following eight filings:

- A motion for a Rule 35 physical and psychological examination of Graziano "as to why the excessive force actions continue to be reported and occur."  (ECF No. 31 at 2.)

- A motion that her "Amendment 5 rights . . . be honored and protected in this case" in light of "a groundless, meretricious, criminal case 15CR1287 in Pueblo Colorado."  (ECF No. 32 at 1.)  Wodiuk provided no details about the case.[3]

- A motion for a general protective order.  (ECF No. 34.)

- A "Motion for Witness Protection."  (ECF No. 36.)  The Court sealed this motion (*i.e.*, Restricted Access, Level 3) because it contains personal identifying information regarding the witness allegedly needing protection, it describes some of the witness's medical history, and it reports potentially embarrassing accusations about the witness.  The gist of the motion, however, is that the Pueblo County Sheriff's Department had been stalking and harassing the witness.  The motion does not say why Wodiuk intended to call this person as a witness.

- A motion to require that transcript fees "be waived" in the Pueblo court

---

[3] Much later in the case, the Court would learn that the criminal case involved charges of identity theft, forgery, and stalking, mostly arising out of Wodiuk's obsession with Franti.  (*See* ECF No. 210 at 10–11.)  According to the probable cause affidavit in that case, Wodiuk had, among other things, forged Franti's signature on deeds to various real properties that she owns. (*See Heidi Wodiuk v. The People of Colorado*, Civil Action No. 17-cv-475-LTB (D. Colo., filed Feb. 22. 2017), ECF No. 1 at 33.)

proceeding opened as a result of the mental health hold, and in the related

dependency/neglect proceeding regarding her child, because "this

material is vital to this case." (ECF No. 39.)

- "Motion for: federal protective for Plaintiff-Dr. Heidi Wodiuk as well as

    motioned for federal intervention into the organized crimes conspired in

    this case, the false reports filed to cover up the organized crime against

    Dr. Wodiuk, as well as relief into Pueblo District Courts retaliatory judicial

    harassment in the court system by filing and pressing cases willfully and

    knowingly without merit or just cause[.] All judicial actions against Dr.

    Woiukd are intently conspired to harm Dr. Wodiuk." (ECF No. 40 at 1.)

- A motion for a continued deposition of Graziano claiming that "attorney

    Tony Viorst did not complete his deposition of the Defendant." (ECF

    No. 43.) The substance of the motion, however, shows that Wodiuk

    believed she should be allowed to press Graziano further regarding

    answers to questions that Wodiuk deemed vague or evasive. (*Id.* at 1–3.)

- "Notice: Dr. Heidi Wodiuk holds an accredited doctorate degree and

    therefore the record must respect and honor Dr. Heidi Wodiuk educational

    status and all legal documents must be changed inaccordance to Dr. Heidi

    Wodiuk education and appear on file and record as <u>Dr. Heidi Wodiuk</u> and

    not Heidi Wodiuk." (ECF No. 44 at 1.) The doctorate in question appears

    to be a doctor of naturopathy degree awarded by Trinity College of Natural

    Health, Warsaw, Indiana. (*See id.* at 3.)

The Court referred everything requiring a ruling to Judge Shaffer, as the Court would do

for all of Wodiuk's motions from this point forward.

2. Graziano's Rule 35 Motion

On October 28, 2015, Graziano filed a motion for independent medical examinations ("Rule 35 Motion"). (ECF No. 47.) Graziano argued that Wodiuk had put her physical condition in question because she claimed that Graziano had caused certain injuries, but other evidence showed that those injuries either never occurred or were the result of preexisting chronic conditions; and Wodiuk had put her mental health in question, "specifically, her perception of reality." (*Id.* at 3.) The Court referred the Rule 35 motion to Judge Shaffer. (ECF No. 49.)

3. Judge Shaffer's Rulings

The hearing scheduled for November 10, 2015, took place on November 23, 2015, to accommodate Wodiuk's schedule. (*See* ECF Nos. 51, 58.) At that hearing, Wodiuk stated that she had not found a new attorney. (ECF No. 58 at 1.) Judge Shaffer then lifted the stay of discovery and extended the discovery deadline to January 29, 2016. (*Id.*) Concerning Wodiuk's many pending motions, Judge Shaffer denied most of them, some with prejudice and some without. (*Id.* at 1–2.) He reserved ruling, however, on Wodiuk's motion for a continued deposition of Graziano, and required Wodiuk to submit the transcript of Graziano's deposition to the Court. (*Id.* at 1.) He also set a deadline for Wodiuk to respond to Graziano's Rule 35 Motion. (*Id.* at 2.)

4. Wodiuk's Response to the Rule 35 Motion

Wodiuk's response to the Rule 35 Motion generically argues that Graziano had failed to establish good cause. (*See* ECF No. 59 at 1–2.) Her only non-generic objection was that "28 months has elapsed from the incident and therefore, no mental health evaluation at this current time will be relevant or reflective to July 22, 2013 initial

7

matter." (*Id.* at 2.) She said nothing about the dispute over her physical condition.

On the same day she filed her response, she also filed:

- "Notice that: the United States District Courts of Colorado were made aware of the organized conspired crime against the Plaintiff related to the Defendant and the courts failed to report or investigate its claims." (ECF No. 60 at 1.) This seems to be some sort of warning about the consequences of Judge Shaffer having denied her "[m]otion for: federal protective" (ECF No. 40).

- "Notice of: Plaintiff discovery private/privileged document's are protected." (ECF No. 61 at 1.) This appears to be a renewal of her motion for a protective order (ECF No. 34), although it was never docketed as a motion and the Court has never treated it as such.

Wodiuk also filed the Graziano deposition transcript, as required by Judge Shaffer. (ECF No. 62.)

5.  <u>Subpoenas & Motions to Quash</u>

From mid-December 2015 to early January 2016, the Court received ten motions to quash subpoenas issued by Wodiuk to:

- the executive director of the Pueblo YMCA, seeking, *e.g.*, "the reports of child abuse that the courts stated the Plaintiff did against her child," "the sworn affidavit of [the executive director] being at threatened, stalked by the Plaintiff as alleged in case 2015CR1287," etc. (ECF No. 72);

- two physicians at a clinic where Wodiuk was a current patient, seeking the types of information that parties must disclose about their expert

witnesses under Rule 26(a)(2), although the persons named in the subpoenas had not been designated as experts (ECF No. 78);

- the Pueblo County Sheriff, again seeking information that parties must disclose about their expert witnesses, although the sheriff had not been designated as an expert (ECF No. 82);

- the Pueblo County Sheriff's Department, seeking an enormous amount of information, ranging from "all use of excessive force reports" regarding Graziano to "all trespassing tickets" and "all active restraining orders" (ECF No. 83);

- the Morgan County (Colorado) Sheriff, seeking information that parties must disclose about their expert witnesses, although the sheriff had not been designated as an expert (ECF No. 90);

- three judges in Colorado's 10th Judicial District (encompassing Pueblo County), seeking records about her mental health hold proceeding, the related dependency/neglect proceeding, and also information that parties must disclose about their expert witnesses, although none of the judges had been designated as an expert (ECF No. 93);

- the clerk of court for the 10th Judicial District, seeking records regarding the Pueblo criminal proceeding Wodiuk mentioned in earlier filings (15CR1287) (ECF No. 95);

- an attorney in the Colorado Office of Attorney Regulation, seeking records regarding Wodiuk's mental health hold proceeding and the related dependency/neglect proceeding, without explanation of why such records

might be found in the Office of Attorney Regulation (ECF No. 101);

- the executive director of the Colorado Commission on Judicial Discipline, also seeking records about her mental health hold proceeding and related dependency/neglect proceeding, as well as records about all complaints against "all Pueblo Colorado Judges from 2010 to present" (ECF No. 102); and

- the psychologist who performed a psychological examination in the dependency/neglect proceeding, seeking a large amount of information on that subject (ECF No. 105).

On January 5, 2016, Wodiuk filed with the Court copies of (apparently) all subpoenas she had issued, showing that she had subpoenaed not only those who had already moved to quash, but also AT&T (cellphone records), Cricket (same), Verizon (same), "Secret Service-Charlie Bean-Colorado" (records regarding threats Wodiuk had allegedly made against President Obama), Mattel Corporation (records regarding Monster High dolls and "all satanic affiliations and satanic religious documentation associated with [them]"), the FBI (records regarding her mental health hold and dependency/neglect proceedings, and any investigations into the Pueblo Sheriff's Department), the U.S. Department of Justice (same), "United States Department of Child Affairs" (same), the Colorado Bureau of Investigation (same), the Internal Revenue Service (same, plus certain information about Franti), Spireon (GPS data), Grand Canyon University (her diploma), Facebook (certain private messages), a software company apparently responsible for the system used in the Pueblo County Sheriff's Department to log incident reports (records regarding certain incidents), the

Medicaid administration (her own medical records), family members apparently responsible for the mental health hold (records in that regard, and many other sorts of records), "Farmer New World Life Insurance" (records regarding a particular policy), Graziano (numerous records related to the incident and the lawsuit), and at least seven other individuals (some of them medical professionals) whose role is unknown.

Later in the day on January 5, 2016, Judge Shaffer held a three-and-a-half hour hearing to resolve the various outstanding motions. (ECF No. 114.) Judge Shaffer granted all of the motions to quash, without prejudice, because the subpoenas sought information that was irrelevant to the case as currently framed. (*Id.* at 1–2.) He denied Wodiuk's motion for a renewed deposition of Graziano for apparently the same reasons. (*Id.* at 3.) Judge Shaffer granted Graziano's Rule 35 Motion. (*Id.*) Finally, he ordered the parties to "work together cooperatively to schedule the Plaintiff's deposition by January 15, 2016." (*Id.*)[4]

6.    Appointment of Counsel & Wodiuk's Detention in Pueblo County Jail

Acting under D.C.COLO.LAttyR 15, Judge Shaffer entered an order on January 8, 2016, finding that Wodiuk "merits appointment of counsel drawn from the Civil Pro Bono Panel," and ordering the Clerk of Court to find a member of that panel willing to represent Wodiuk. (ECF No. 116.)

On January 11, 2016, Wodiuk filed "Demand for immediate relief: Crime Act of 1970 violation of treason by acts of grand treason to kidnapping with unenforcemable evidence received by bargains is a violation of criminal statute." (ECF No. 119 at 1.)

---

[4] In the context of the order, it appears that January 15, 2016 was the deadline for the parties to set a firm deposition date, not a deadline by which the deposition must happen. (*See id.* (ordering the parties to file a status report on January 15, 2016 "advis[ing] the court that all depositions have been scheduled").)

This filing, however, bears the caption of the Pueblo criminal case (15CR1287), and is essentially a motion to dismiss that case. The Court therefore treated it as a notice, not a motion.

On January 14, 2016, the Court received a handwritten notice from Wodiuk that she was "being taken to jail for case 15CR1287," meaning she might not be able to make court appearances in this case. (ECF No. 121.) Later the same day, Graziano filed the status report Judge Shaffer required, stating that her counsel had not heard from Wodiuk since January 7—perhaps because of the arrest she reported in her handwritten notice—and so her renewed deposition had not been scheduled. (ECF No. 122.)

On February 1, 2016, Wodiuk filed a handwritten "writ of certiorari," stating that she was "currently falsly detained," and complaining that the Pueblo County Sheriff's Office was opening her mail—and that of President Obama, Oprah Winfrey, Franti, "along with many others, without our permission." (ECF No. 123 at 2, 3.) She asked for "higher court intervention, so to protect from miscarriage of justice." (*Id.* at 5.)

On March 14, 2016, the Court received five motions from Wodiuk:

- "Demand for relief: Plaintiff response to Defendant's evidence tampering claim." (ECF No. 130.) It is not clear what evidence tampering claim Wodiuk had in mind.

- A motion for "District Court of U.S. Intervention" into the Pueblo criminal proceeding due to an alleged speedy trial violation. (ECF No. 131.)

- A motion for the Court to appoint Wodiuk "a federal prosecutor," and to appoint a guardian ad litem for Wodiuk's child. (ECF No. 132.)

- "Motion to: inform the Court of Sean Lane [one of Graziano's attorneys] evidence tampering and failure to report child porn to FBI related to this case." (ECF No. 133.) This motion accuses Mr. Lane of providing, without consent, some of Wodiuk's personal files to the Pueblo County Sheriff's Office, and failing to report to the FBI that those files contained child pornography.

- A motion for "continuance of claim"—in effect, a stay—until the Court appointed the "federal prosecutor" for Wodiuk. (ECF No. 144.)

## C.    Proceedings While Wodiuk Was Represented by Mr. Glantz

On April 19, 2016, Attorney Perry L. Glantz filed a notice of appearance as *pro bono* counsel for Wodiuk. (ECF No. 146; *see also* ECF No. 144.) Mr. Glantz filed a status report on May 10, 2016, informing the Court that Wodiuk had been committed to the Colorado Mental Health Institute at Pueblo ("state hospital") because she had been found incompetent to proceed in the Pueblo criminal case. (ECF No. 150 at 1.)

On June 17, 2016, Mr. Glantz filed a motion to appoint a guardian ad litem for Wodiuk. (ECF No. 152.) At a hearing on June 23, 2016, Judge Shaffer denied that motion without prejudice and administratively closed the case in light of Wodiuk's civil commitment to the state hospital. (ECF No. 156 at 2.)

On August 24, 2016, the Court received a handwritten motion from Wodiuk herself, asking for the "case to proceed." (ECF No. 52 at 1.) Wodiuk had interpreted the administrative closure as a permanent end to the case and asserted that Mr. Glantz did not have her permission to dismiss the case. (*Id.*) The Court struck that filing because, per D.C.COLO.LAttyR 5(a)(4), only an unrepresented party or a member of

the bar of the Court may sign and file pleadings.  (ECF No. 160.)

On September 15, 2016, an attorney in Mr. Glantz's office filed a status report (Mr. Glantz himself was unable to make the filing, due to serious bike accident that rendered him unable to perform his work).  (ECF No. 162.)  This report informed the Court that Wodiuk had been discharged from the state hospital and returned to the Pueblo County Jail.  (*Id.* ¶ 2.)  The attorney also filed a motion for himself and Mr. Glantz to withdraw in light of Mr. Glantz's incapacity and the attorney's own inability to take the case.  (ECF No. 163.)

**D.    Proceedings While Wodiuk Represented Herself (Second Time)**

1.    Attempts to Hold a Status Conference & Wodiuk's Unrelated Filings

On September 16, 2016, Judge Shaffer granted the motion to withdraw, meaning that Wodiuk was *pro se* once again.  (ECF No. 165.)  Over the next month, Judge Shaffer set and reset telephonic status conferences, but Wodiuk apparently did not receive notices of those conferences.

On October 12, 2016, the Court received from Wodiuk a missing child flyer featuring pictures of, and information about, Wodiuk's child.  (ECF No. 177.)  Because of personal identifying information on that flyer, the Court placed it under Restricted Access, Level 3.  The flyer states that Wodiuk's child was kidnapped on July 22, 2013 (*i.e.*, the date of the incident leading to this lawsuit) and names twenty-one individuals as the child's kidnappers.  (*Id.*)  Among those names are members of the Pueblo County Sheriff's Office (including Graziano), members of Wodiuk's family, and "Judge Schaffer."  (*Id.*)

The flyer asked readers to find out more on Wodiuk's YouTube channel, and the envelope in which the flyer was mailed to the Court displayed a residential return

address for Wodiuk.  Judge Shaffer accordingly presumed that Wodiuk had been released from the Pueblo County Jail, and he ordered her to appear in person for a status conference on November 17, 2016.  (ECF No. 178 at 2.)

On October 24, 2016, the Court received from Wodiuk a "demand for relief" based on the allegation that the Pueblo County Sheriff's Department was "illegally monitoring [her] cell phone without a warrant," meaning that all court hearings at which she appeared in 2014 and 2015 "were recorded by third parties off of her cell phone through illegal hackers listening in."  (ECF No. 179 at 1.)  Judge Shaffer denied the motion.  (ECF No. 182.)

On October 26, 2016, the Court received from Wodiuk another "demand for relief" seeking "habeas corpus release of [Wodiuk's child] back to Dr. Heidi Wodiuk full custody."  (ECF No. 183.)

On October 31, 2016, the Court received from Wodiuk an "invoice of *pro se* discovery defendant failed to pay for."  (ECF No. 185.)  This document claimed that Graziano owed Wodiuk $1,600 for an "[e]vidence fee" that was now "a year past due." (*Id.* at 1, 2.)  Wodiuk nowhere explains what she spent this $1,600 on, nor why Graziano is obligated to pay it.  She nonetheless demanded immediate payment "or this bill will be sent to collections."  (*Id.* at 2.)

On November 3, 2016, the Court received from Wodiuk a demand that this Court or the State of Colorado (the document is ambiguous) pay Wodiuk and Franti $23,328,000 because of the Court's or the State of Colorado's "willful, conscious, malicious aiding and abetting 15CR1287 domestic terrorism acts against Dr. Heidi Wodiuk done for the state in racketeering in human trafficking in the national economy

cartels."  (*Id.* at 1, 2.)

Judge Shaffer held a hearing on November 17, 2016, as scheduled, and Wodiuk appeared in person.  (ECF No. 188 at 1.)  Judge Shaffer told Wodiuk that her recent filings were not considered motions.  (*Id.*)  Wodiuk informed Judge Shaffer that her Pueblo criminal case was set for trial on March 6, 2017.  (*Id.*)  The major topic of discussion, however, was whether to move forward with the case—which was still administratively closed.  Judge Shaffer "advised [Wodiuk] that she may not file motions seeking relief while this case is closed," and set a further status conference for December 6, 2016 "to discuss if the case will be reopened."  (*Id.* at 2.)  Judge Shaffer also placed Wodiuk back "on the list for *pro bono* counsel."  (*Id.*)

On November 22, 2016, the Court received from Wodiuk a "demand for relief: PATRIOT Act violation's done by this Court."  (ECF No. 190.)  This document accused the Court of "aiding and abetting domestic terrorism acts made against Dr. Heidi Wodiuk," somehow related to law enforcement officers "detaining her on a presidential threat . . . so to discredit her in this case for trial in hopes to sway a jury."  (*Id.* at 1–2.)

In anticipation of the December 6, 2016, status conference, the parties each filed a status report.  Graziano stated that, were the case to be reopened, the only discovery that had yet to be completed was the reopening of Wodiuk's deposition "and, possibly, [Rule 35 physical and mental health evaluations].  The necessity of these examinations depends in large part on Plaintiff's testimony during her renewed deposition."  (ECF No. 192 ¶ 7.)  Wodiuk, for her part, asked that the Court "maintain this court case as it is [*i.e.*, administratively closed] until case 15CR1287 case is dismissed," apparently

because she would invoke the Fifth Amendment during any discovery in this case to avoid incriminating herself in the other case. (ECF No. 193 at 1.)

The December 6, 2016 status conference took place as scheduled, and Wodiuk appeared in person. (ECF No. 194.) Judge Shaffer agreed to keep the case administratively closed in light of Wodiuk's pending criminal case. (*Id.*) He ordered the parties to file status reports by February 23, 2017, which was one week after a pretrial conference scheduled in the criminal case. (*Id.*) He further ordered:

> To the extent Ms. Wodiuk is seeking relief from the court, she must file a motion. Ms. Wodiuk is not permitted to file demands or petitions with the court. The only demand that can be filed would be in form of a new lawsuit. The court will strike all further demands filed in this case.
>
> While this case is administratively closed, parties are not allowed to file any motions, with the exception of a motion to re-open the case.
>
> Going forward, any filings by Ms. Wodiuk must fully comply with the Federal Rules of Civil Procedure and this Court's Local Rules.

(*Id.* at 2.)

On December 19, 2016, the Court received from Wodiuk a "notice of: cease and desist your RICO-Hitler acts now." (ECF No. 195 at 1.) The notice accused the Court of "acting in sedition and doing whatever they want based on Robert Troyer movement in population control." (*Id.*)[5]

### 3.    Wodiuk's Incompetency Finding & Graziano's First Rule 41(b) Motion

On February 15, 2017, the Court received from Wodiuk a status report regarding her Pueblo criminal case. (ECF No. 199.) "As of today," she said, "I-Dr. Heidi Wodiuk

_____

[5] Robert Troyer was United States Attorney for the District of Colorado from 2016 to 2018.

am deemed incompetent to the basics of law in 15CR1287 and delusion for my famous and rich friends, acquaintances and family affiliations of which are all documented in the case." (*Id.* at 1.) Wodiuk went on to make various accusations against the psychologist performing the competency evaluation, her criminal defense attorney, and the trial court judge. (*Id.* at 1–2.) She also claimed that the judge "stated on record on February 2, 2017 that Dr. Wodiuk would be held to 98 years at maximum prison in CMHIP facility [*i.e.*, the state hospital] if Dr. Wodiuk does NOT cooperate with life-threatening medications, evaluations, treatment etc." (*Id.* at 2.) "Therefore, as it stands case 15CR1287 is on hold due to unlawful and unconstitutional competency hold and therefore, this [case] too is to be held on hold as well." (*Id.*)

On February 23, 2017, Graziano filed a motion to dismiss for lack of prosecution under Federal Rule of Civil Procedure 41(b). (ECF No. 201.) The motion emphasized that "[t]his case has languished for 16 months since Plaintiff's original counsel withdrew in October 2015," "[t]he law enforcement contact which led to this case occurred over 3 and a half years ago," and, although the Court administratively stayed the case to accommodate the Pueblo criminal proceedings, "[g]iven Plaintiff's recent return to a status of legal incompetence in her Pueblo County District Court case(s), it is unclear when, if ever, her criminal charges will proceed to trial." (*Id.* at 4, 5, 6.) But, Graziano argued, during the time periods when Wodiuk was not "under the shadow of legal incompetency," she nonetheless did "nothing to advance the progress of her case." (*Id.* at 6.) "Plaintiff's lack of relevant action has reached a degree where dismissal is an appropriate action by this Court." (*Id.* at 7.) The Court referred Graziano's motion to Judge Shaffer. (ECF No. 202.)

On May 12, 2017, Judge Shaffer entered a minute order stating that he was "working on the parties' pending motions and would like to review the deposition of Plaintiff in the context of considering those motions." (ECF No. 207.) He therefore ordered Graziano's counsel to provide a copy of that deposition. (*Id.*)

On May 18, 2017, the Court received from Wodiuk a "motion for: contempt of court ex parte crimes to be motioned in reporting to FBI, the US judicial discipline board and the United States President Donald Trump today for the prohibited crimes done in ex parte." (ECF No. 208 at 1.) The motion accused the judges who have presided over her cases, and the attorneys involved in those cases, of "partaking in ex parte communications to organize and conspire harm to Dr. Wodiuk and her child and all the case witnesses." (*Id.*) The motion provided no factual basis for these accusations.

4. <u>Judge Shaffer's Rulings and Appointment of a Temporary Guardian ad Litem</u>

On June 6, 2017, Judge Shaffer denied the "contempt" motion as "wholly frivolous," and reminded Wodiuk that, "[a]s Senior Judge Babcock advised [her] in other cases,[6] even a *pro se* litigant does not have the right to abuse the judicial process by filing motions or other submissions that are wholly without factual or legal merit." (ECF No. 210 at 37.)

In that same order, Judge Shaffer also denied Graziano's motion to dismiss for lack of prosecution. After a review of proceedings to date, Judge Shaffer concluded,

---

[6] *See Heidi Wodiuk v. Ian Cooper*, Civil Action No. 17-cv-943-LTB (D. Colo., filed Apr. 18, 2017); *Heidi Wodiuk v. The People of Colorado*, Civil Action No. 17-cv-475-LTB (D. Colo., filed Mar. 24, 2017); *Heidi Wodiuk v. Pueblo Water Conservancy Dist.*, Civil Action No. 17-cv-223-LTB (D. Colo., filed Jan. 25, 2017); *Heidi Wodiuk v. Ian Cooper*, Civil Action No. 16-cv-2974-LTB (D. Colo., filed Dec. 6, 2016); *Heidi Wodiuk v. The People of Colorado*, Civil Action No. 16-cv-983-LTB (D. Colo., filed May 2, 2016).

> I do not find that Officer Graziano has suffered a "degree of
> actual prejudice" that would justify imposition of an extreme
> sanction. While memories are likely to fade with the
> passage of time, Defense counsel has not demonstrated an
> inability to discover relevant facts surrounding the events at
> the Kohl's Department Store parking lot. Counsel
> questioned Ms. Wodiuk at length during her deposition in
> 2015 and obtained Plaintiff's detailed account of what
> occurred during her interaction with Officer Graziano.
> Indeed, save for the possibility of re-opening Ms. Wodiuk's
> deposition to address a limited number of topics (which may
> or may not be relevant to Plaintiff's alleged damages),
> defense counsel appears to have completed discovery
> directed to issues of liability.

(*Id.* at 19.) Judge Shaffer also stated that he could not

> find that delay is the result of wil[l]ful misconduct on the part
> of Ms. Wodiuk. The withdrawal of Plaintiff's original counsel
> was a complicating factor, but without knowing all of the
> circumstances that prompted counsel's motion, this court is
> not prepared to ascribe any wrongful motive to Ms. Wodiuk.
> Certainly, Plaintiff cannot be faulted for her second counsel's
> bicycle accident and resulting motion to withdraw. Although
> the Pueblo County District Court's competency findings have
> delayed the criminal case (and this case indirectly),
> Ms. Wodiuk has challenged the findings of the [state
> hospital] evaluators. . . . It further bears noting that
> Ms. Wodiuk has never been put on notice that this case
> could be dismissed with prejudice for failure to prosecute.

(*Id.* at 20–21 (footnote omitted).)

As an alternative to Rule 41(b) dismissal, Judge Shaffer invoked Rule 17(c)(2),

which requires district courts to "appoint a guardian ad litem—or issue another

appropriate order—to protect a minor or incompetent person who is unrepresented in an

action." (*See* ECF No. 210 at 30.) Judge Shaffer found Wodiuk incompetent to

proceed based on the competency ruling in her criminal case, a similar ruling in a civil

case in Pueblo County, and "[his] own observations of Ms. Wodiuk during several

hearings in this case." (*Id.* at 35.) Judge Shaffer therefore stated that he would appoint

a guardian ad litem for 45 days, during which time Wodiuk could submit information disputing Judge Shaffer's incompetency finding—and, upon receipt of that information, Judge Shaffer would decide whether to make the guardian ad litem's appointment indefinite, or to hold a hearing.  (*Id.* at 36–37.)

5.    Wodiuk's Reaction

On June 19, 2017, the Court received from Wodiuk a "demand for relief: unconstitutional GAL requests and deprivation of medical and legal rights in this case with due process violations."  (ECF No. 211 at 1.)  Wodiuk asserted that a particular attorney had contacted her about an appointment to be a guardian ad litem, and Wodiuk objected that she had not received a competency hearing.  (*Id.*)  She further characterized the appointment of a guardian ad litem as "an act of treason to wrongfully take my estate or wrongfully and criminally take conservatorship over my finances in a crime of treason."  (*Id.*)

On June 26, 2017, Wodiuk filed a motion for a copy of Judge Shaffer's June 6 order, stating that she had learned of it but had not received it, and asking for it to be mailed to a PO Box in Colorado Springs.  (ECF No. 213.)  On June 29, 2017, however, she filed another motion asking the court to "cure it is deficient demands" in the June 6 order because she did not have a copy of the competency evaluation in her criminal case and so could not submit it to Judge Shaffer (ECF No. 216)—showing that, by that time, she had received a copy of Judge Shaffer's order.

On June 30, 2017, Judge Shaffer denied Wodiuk's "cure" motion because Wodiuk had stated that she tried and failed to obtain her competency evaluation from her attorney and from the Pueblo courts, with all attempts "documented and witnessed," yet Wodiuk "does not attach any of the documentation, or otherwise illuminate for the

court what requests she made." (ECF No. 218 at 2.)  A couple of weeks later, Wodiuk's criminal defense attorney sent Judge Shaffer competency evaluations from May 2016 and April 2017.  (*See* ECF No. 220 at 1; ECF No. 222 at 3 n.1.)

### 6. Appointment of Counsel and a Non-Temporary Guardian ad Litem

By order dated August 11, 2017, Judge Shaffer concluded, in light of the competency evaluations he had received and Wodiuk's record of behavior in this case, that she was incompetent and that a guardian ad litem should be appointed for the foreseeable future.  (ECF No. 223 at 3–5.)  Judge Shaffer further ordered "that the Clerk shall renew Plaintiff's placement on the court's list for a pro bono attorney under the Civil Pro Bono Panel."  (*Id.* at 5.)

## E. Proceedings While Wodiuk Was Represented by Mr. Glantz (Second Time) and Ms. Day, with Mr. Glatstein as Guardian ad Litem

### 1. Appointment of the Guardian ad Litem and Reappointment of Counsel

On August 11, 2017, the Court appointed Mr. M. Carl Glatstein as guardian ad litem, and it reappointed Mr. Glantz—who had apparently recovered from his bike accident—as Wodiuk's attorney.  (ECF No. 223.)

On August 25, 2017, but Court received from Wodiuk a "notice of: GAL Carl Glatstein to report malicous and prohibited organized white-collar crimes to FBI immediately."  (ECF No. 227 at 1.)  Wodiuk asserted that she had "received a malicious unconstitutional GAL" and recounted a recent telephone conversation with Mr. Glatstein where she challenged him "to explain how a GAL would be of a legal need for me- a able bodies, sharp minded, well educated, competent, highly capacitated person."  (*Id.* at 2.)  She further demanded that Mr. Glatstein meet her at "the FBI building in Denver" the following month.  (*Id.*)

2.    <u>Wodiuk's Letters</u>

Between September 5 and September 29, 2017, Wodiuk filed with the Court copies of nine letters that she had written (mostly to Messrs. Glantz and Glatstein), specifically:

- an August 31, 2017 letter to Mr. Glantz, complaining that he had previously withdrawn, "leaving me for dead at [the state hospital] and Pueblo County Jail in 2016," announcing that she was "hold[ing] you Mr. Glantz legally liable for the irreparable injuries" allegedly caused at those institutions, and accusing him of "ex parte communication with malicious GAL Carl Glatstein" (ECF No. 230 at 1);

- an August 31, 2017 letter to Mr. Glatstein, recounting a telephone conversation of the same day, complaining that Mr. Glatstein would not "report legalized kidnapping of my child and the attempted murder and kidnapping of me to FBI," and accusing him of "organizing and conspiring with Perry Glantz to rob me in the settlement monies to come in this case" (*id.* at 2);

- a September 5, 2017 letter to then-Governor Hickenlooper, asking why he had not responded to a purported warning from then-U.S. Attorney General Jeff Sessions about "rebellious government actors running RICO, Domestic Terrorism Groups by use of Government seats of office or power, Human Trafficking, Genocide Crimes, Child Sex Cartels, Drug Cartels, Sex Cartels and depriving us citizens from judicial abuse" (ECF No. 231);

- a September 11, 2017 letter to Messrs. Glantz and Glatstein, complaining that they had not reported "the crimes done to me, my child and my estate" to the FBI, and noting that her "reason for putting your failures in writing" was "so that it is legal and you are seen in your assessor criminal acts done against me, my child, my estate, my witnesses et al." (ECF No. 233);

- a September 12, 2017 letter to Messrs. Glantz and Glatstein, supposedly attaching a police report, "so that you are abridged to the organized crime done against me and that I am suffering domestic terrorism by the Defendant et al. in the Pueblo Sheriff Department linked to this federal case" (ECF No. 235);

- a September 13, 2017 letter to Messrs. Glantz and Glatstein, again complaining of their failure to report crimes to the FBI, further complaining that they would not meet her at the FBI building in Denver, and attaching an x-ray purportedly showing "the damage to my neck as too the damage to my wind pipe" (ECF No. 236);[7]

- a September 20, 2017 letter to Messrs. Glantz and Glatstein that reproduces the September 13 letter mostly verbatim, minus discussion of the x-ray (ECF No. 243);

- a September 22, 2017 letter to Messrs. Glantz and Glatstein that again complains about their failure to meet her at the FBI building in Denver, and also informs them that she was "a victim of the Wells Fargo bank

_____

[7] It is not clear from the letter if Wodiuk means to say that this was damage inflicted by Graziano.

robberies and am in class action suits" (ECF No. 245); and

- a September 25, 2017 letter to Messrs. Glantz and Glatstein, demanding
  that they subpoena security footage from a hotel, at which Wodiuk says
  she was "intimidated, stalked, harassed, by actors who are linked to my
  federal case and were sent to threaten me" (ECF No. 248).

3.  Reopening of the Case

Judge Shaffer held the status conference on October 2, 2017, with Messrs.
Glantz and Glatstein present, alongside Wodiuk.  (ECF No. 249 at 1.)  Judge Shaffer
instructed Wodiuk that she "may not file anything in this case while she is represented
by counsel and or a guardian ad litem."  (*Id.*)  Judge Shaffer then ordered that the case
be reopened and that Graziano file a motion for summary judgment by October 30,
2017.  (*Id.*)

4.  More Filings from Wodiuk

From October 2 to October 17, 2017, the Court received from Wodiuk the
following, specifically:

- a September 30, 2017 letter to numerous persons, including Messrs.
  Glantz and Glatstein, asserting that "several psychologists" have told her
  "that I do NOT have a mental illness" and that "the neurologist and other
  doctors have . . . noted on my REAL medical records that my story checks
  out and it is NO delusion" (ECF No. 250);

- an October 2, 2017 "notice of: treason to the color of law and
  Constitution," accusing Messrs. Glantz and Glatstein of failing to keep her
  properly apprised, and also failing to "report federal corruption, organized
  crime, legalized kidnapping, legalized murder ploys acted out and

conspired, deprivation of all legal and medical rights and also presidential threats, and genocide" (ECF No. 251);

- an October 4, 2017 letter to "Denver First-Denver University-William Neil Gowensmith, Ph.D," accusing the University of Denver of being "on the back end promised monies to my estate for the Sherman act crimes being done to me, my daughter, Michael Franti and Oprah Winfrey estate" (ECF No. 254 at 5);

- an October 4, 2017 letter to the US Marshals Service, the FBI, and the Department of Homeland Security, apparently complaining about being unable to make a video or audio recordings in this courthouse (*id.* at 6);

- an October 5, 2017 letter to Messrs. Glantz and Glatstein, asserting her understanding that Mr. Glantz is really an attorney for Mr. Glatstein, meaning she was "still acting Pro Se with a GAL and GAL assistant attorney," but otherwise requesting that they help her with various matters, including sending a check to Franti "for him to cash as I can NOT cash it without his signature" (ECF No. 253);

- an October 5, 2017 "notice of: October 2, 2017 court room deprivation of rights," criticizing Judge Shaffer's actions at the October 2, 2017 status conference (ECF No. 254 at 1–4);

- an October 5, 2017 letter to various Pueblo County governmental authorities complaining that Franti's name had been improperly removed from property records associated with properties that Wodiuk owns, and insisting that Franti and Oprah Winfrey had "both been legally notified and

fully consented" to being joint owners of Wodiuk's properties (ECF
No. 255);

- an October 8, 2017 letter to Messrs. Glantz and Glatstein, theorizing that
  Mr. Glantz's bike accident was part of a larger plot against Wodiuk that
  "strangely is the same similar events as done in the 'white water' case
  filed against the Clinton's," but also repeating her view that she remained
  unrepresented because Mr. Glantz was Mr. Glatstein's attorney, not hers
  (ECF No. 257);

- an October 8, 2017 "motion for: penal sanctions to be imposed for due
  process violations in willful, concious obstruction of civil justice," asserting
  that Judge Shaffer should be disciplined for appointing a guardian ad litem
  (ECF No. 258); and

- an October 15, 2017 letter to Wodiuk's criminal defense attorney,
  complaining that she has not heard from him since December 2016, and
  also that he had "failed to notify the FBI, notify Michael Franti of this case
  and his estate in the insurance matters and checks in his name" (ECF No.
  264).

On October 30, 2017, Graziano filed the partial summary judgment motion that
Judge Shaffer directed her to file as of that date, attacking an unlawful search claim that
have been lingering in the case.  (ECF No. 265.)  However, a stipulation between the
parties a few weeks later rendered the unlawful search claim moot (ECF No. 275), and
the Court therefore denied the summary judgment motion as moot (ECF No. 303).

From November 6 to 8, 2017, the Court received two additional letters from

27

Wodiuk of the same character as those already described.  (ECF Nos. 266, 270.)  Also, on November 8, 2017, the Court received from Wodiuk a "demand for relief: levy for war crime of hostage taking."  (ECF No. 271 at 1.)  This document describes a supposed invasion of "Winfrey and Wodiuk's Beulah [Colorado] home" by the Pueblo Sheriff's Department, attempting to murder her, although other details in the letter suggest that they arrested her and brought her to the Pueblo County Jail.  (*Id.* at 1–2.)

    5.    Substitution of Judge Carman

    As is now well known, Judge Shaffer was diagnosed with cancer in October 2017 and required immediate, intensive treatment.  His caseload was therefore transferred to U.S. Magistrate Judge Mark L.  Carman of the United States District Court for the District of Wyoming.  (*See* ECF No. 268.)  Judge Carman scheduled a competency hearing for December 13, 2017 (ECF No. 269), but learned at a status conference on December 8, 2017 that Wodiuk was currently incarcerated (ECF No. 279 at 1).  Counsel for both sides agreed that a competency hearing would not be beneficial under the circumstances, and Judge Carman therefore vacated it.  (*Id.*)  The parties discussed how to proceed with the case, and counsel for Graziano asked to conduct a Rule 35 exam.  (*Id.*)  Judge Carman elected to hold a new scheduling conference on January 11, 2018.  (*Id.*)  Also at that status conference, an additional attorney for Mr. Glantz's firm, Ms. Anna Day, entered an appearance.  (*See id.*; *see also* ECF No. 301 (Ms. Day's formal entry of appearance).)

    Between that status conference and the January 2018 scheduling conference, the Court received from Wodiuk numerous "demands for relief," notices, copies of pleadings filed in Wodiuk's Pueblo criminal case, and copies of grievances filed with the Pueblo County Jail.  (*See* ECF Nos. 280, 283, 284, 286, 288, 290, 293, 294, 297, 298,

299, 300.)  Most of these filings relate to the Pueblo proceedings and her conditions of confinement.  For present purposes, it suffices to summarize only the following:

- a copy of a December 12, 2017 motion for a personal recognizance bond, filed by Wodiuk's new criminal defense attorney so that she could be released to the state hospital, because the attorney believed Wodiuk was "in danger and needs to receive" expedited psychiatric care (ECF No. 283 at 1);

- a December 13, 2017 "notice" from Wodiuk that her new criminal defense attorney was in league with her former defense attorney and the district attorney (ECF No. 284); and

- a December 27, 2017 purported mandamus petition from Wodiuk accusing Messrs. Glantz and Glatstein of multiple supposed crimes committed against her (ECF No. 297).

6.  <u>New Scheduling Order</u>

The January 11, 2018 scheduling conference happened as scheduled.  (ECF No. 304.)  The parties discussed "reopening the Plaintiff's deposition, getting an IME [*i.e.*, a Rule 35 examination] of the Plaintiff, and the difficulty of doing these given Ms. Wodiuk's current location."  (*Id.* at 1.)  In the resulting scheduling order, Judge Carman noted that

> the parties agree[d] that the remaining fact discovery will be limited to the following:
>
> (1) a Fed. R. Civ. P. 35 examination of Wodiuk, if such an examination is possible given Wodiuk's mental condition;
>
> (2) no more than 10 requests for admission propounded by Defendant regarding the authenticity of certain documents; and

(3) no more than 7 interrogatories propounded by Defendant regarding Wodiuk's damages.

(ECF No. 305 at 4.)  The scheduling order also set a fact discovery deadline of February 15, 2018, an expert discovery deadline of April 18, 2018, and a dispositive motion deadline of April 30, 2018.  (*Id.* at 6.)

From the scheduling conference through the dispositive motion deadline, the Court received from Wodiuk dozens of additional letters, notices, demands for relief, copies of grievance forms, and other communications.  (*See* ECF Nos. 307, 312, 313, 314, 315, 320, 321, 322, 327, 328, 329, 331, 333, 335, 336, 337, 338, 340, 342, 343, 345, 346, 347, 348, 349, 350, 353, 354, 355, 356, 358, 359, 361, 362, 364, 365, 367, 368, 369, 376.)  These documents are of the same character as those already described above, with numerous accusations of conspiracies, involvement of famous persons (Martha Stewart, Snoop Dogg), and descriptions of supposed crimes that Wodiuk had reported to major national figures such as the Attorney General and the President.  The salient points, for present purposes, are that Wodiuk was transferred to the Fort Logan branch of the state hospital in January 2018 (*see* ECF No. 312) and she continued to consider Messrs. Glantz and Glatstein to be antagonistic to her interests (*see* ECF No. 320).

7.    Summary Judgment Practice

Graziano filed her motion for summary judgment on April 30, 2018, attacking the only remaining claim in this lawsuit, *i.e.*, that she applied excessive force during the arrest on July 22, 2013.  (ECF No. 378.)  Between that motion and Wodiuk's response (filed by Ms. Day) (ECF No. 391), it became clear that the incident in question arose essentially as follows:

- Graziano handcuffed Wodiuk in the usual manner (*i.e.*, with Wodiuk's hands behind her back).

- Graziano then leaned into Wodiuk from behind to prompt her to move toward the patrol car.

- As Graziano leaned into Wodiuk, Wodiuk either pinched Graziano in the stomach (Graziano's story) or Graziano perceived a pinch on account of the way Wodiuk's handcuffed hands naturally moved when they made contact with her stomach (Wodiuk's story).

- Graziano either "attempted to use a common per[o]neal strike" (*i.e.*, a strike to the peroneal nerve on the back of the leg) to force Wodiuk to release the pinch, which failed, but Graziano nonetheless managed to push Wodiuk to the patrol car and put her in the backseat (Graziano's story); or Graziano violently pumped Wodiuk's handcuffs up and down, kneed Wodiuk in the back, and struck her twice in the back with a closed fist, leading to various shoulder and hip injuries requiring surgery (Wodiuk's story).

(*Compare* ECF No. 378-1 at 6 *with* ECF No. 391 at 6–8.)

In the middle of summary judgment briefing, Judge Carman entered a final pretrial order and the Court set a jury trial for October 2018. (ECF Nos. 392, 394.)

8. <u>Graziano's Motion to Strike</u>

On July 3, 2018, a few weeks after summary judgment briefing was completed, Graziano filed a Motion to Strike Plaintiff's Incomplete Deposition ("Motion to Strike"). (ECF No. 402.)

The Motion to Strike is in the nature of a motion *in limine*. Graziano recounted the basis for her Motion for Continued Deposition, Judge Shaffer's grant of that motion, and the parties' inability to schedule the continued deposition, which Graziano attributed to Wodiuk's intentional noncooperation. (*Id.* ¶¶ 2–10; *see also* Parts I.A.3, I.A.5, and I.B.6, above.) Graziano's counsel had also recently learned that, given Wodiuk's confinement in the state hospital, Mr. Glatstein intended to go to trial without her presence, relying solely on her deposition testimony. (ECF No. 402 ¶¶ 12–13.)

Graziano considered this prejudicial for two reasons. First, she cited Rule 32(a)(6), which states, "If a party offers in evidence only part of a deposition, an adverse party may require the offeror to introduce other parts that in fairness should be considered with the part introduced, and any party may itself introduce any other parts." From Graziano's perspective, this rule was frustrated because she was unable to develop other parts of the deposition that should, in fairness, be considered alongside the rest of the deposition. (*Id.* ¶¶ 14–16.) Second, Graziano noted that Wodiuk's deposition was taken for discovery purposes only, and was not intended to preserve Wodiuk's testimony for use at trial. Thus, Graziano's counsel approached the deposition differently than he would have if he had known that it would be the only testimony from Graziano at trial. (*Id.* ¶¶ 17–22.)

Wodiuk's counsel responded that the topics on which Graziano originally sought the continued deposition were now irrelevant. Wodiuk's counsel asserted that further questioning about the paternity of Wodiuk's child "would have been potentially relevant to the unlawful search and seizure claim that was previously dismissed by joint stipulation." (ECF No. 403 ¶ 5.) And regarding the ownership of Wodiuk's properties,

Graziano had stated that this was relevant to damages for lost income and increased maintenance expenses, but Mr. Glatstein was "willing to withdraw [that claim of damages] from the case altogether." (*Id.*) From Wodiuk's counsel's perspective, Graziano was not moving to strike "because [the deposition] is allegedly incomplete. Rather, [she] seeks to strike [Wodiuk's] deposition because she knows that, without this deposition, there is no way for [Wodiuk] present her case to a jury," given Wodiuk's psychiatric status. (*Id.* ¶ 9.)[8]

In reply, Graziano stated that the topics on which the continued deposition would focus were not irrelevant because, at a minimum, they informed Wodiuk's credibility, "based upon her perception of reality." (ECF No. 405 ¶¶ 2–6.) Graziano further claimed that it would be "fundamentally unfair" to permit Wodiuk "to pursue her claim *in absentia*, without [Graziano] having the opportunity to meaningfully cross examine [her], the sole fact witness presented on her behalf." (*Id.* ¶ 13.)

9. Administrative Closure (Second Time)

On September 10, 2018, the Court ordered the parties to show cause "why this case should not be administratively closed until such time as Plaintiff is no longer deemed incompetent, or other such time as the Court may order." (ECF No. 406.) The Court's reasoning was that both sides (not just Graziano) faced potential prejudice, and a trial might be practically pointless, if Wodiuk "testified" solely through her deposition transcript:

---

[8] Judge Carman's scheduling order mentions the continued deposition but states that the parties had agreed only to pursue a Rule 35 exam and certain written discovery. (*See* Part I.E.6, above.) In response to the Motion to Strike, however, Wodiuk's counsel did not argue that the scheduling order somehow revised or overturned Judge Shaffer's grant of Graziano's Motion for Continued Deposition. The Court therefore presumes that Judge Shaffer's order remains intact.

> It is clear from the pending motions [*i.e.*, the summary
> judgment motion and Motion to Strike] that Plaintiff is not
> competent to testify at trial.  Without prejudging the pending
> motions, the Court fears that, no matter how meritorious
> Plaintiff's claims may be from an objective standpoint, a trial
> where the most important testimony in Plaintiff's case-in-
> chief must come by way of Plaintiff's own deposition, which
> was not taken for trial-preservation purposes, may severely
> impede Plaintiff's ability to present an effective case to the
> jury.  Moreover, Defendant has at least a colorable argument
> that she will be prejudiced if she must defend against
> testimony from an incomplete deposition that was not
> reopened, contrary to the intent of Magistrate Judge Shaffer.
> In short, the Court wishes to avoid a trial that may be a
> foregone conclusion even if, from a purely legal perspective,
> there is a genuine issue of material fact to resolve.

(*Id.*)

In response, Mr. Glatstein stated that he did not oppose administrative closure. (ECF No. 409 at 1–2.)  Graziano urged the Court to simply grant her summary judgment, or to again consider Rule 41(b) dismissal, but nonetheless "recognize[d] the dilemma faced by this Court, and underst[ood] the purpose of administratively closing this matter."  (*Id.* at 2–3.)

On September 17, 2018, in light of the parties' responses, the Court denied Graziano's summary judgment motion and Motion to Strike without prejudice, vacated the October 2018 trial setting, administratively closed the case, and ordered Wodiuk's counsel to file status reports every six months.  (ECF No. 409.)

10. <u>More Letters from Wodiuk</u>

By this point, the Court had received nothing directly from Wodiuk since April 2018.  On September 18, 2018, however, the Court received a letter generally complaining that the Fort Logan state hospital was not adequate to treat those deemed incompetent to proceed to trial, supposedly demonstrating that her commitment to the

state hospital was a "ploy." (ECF No. 410.)

The docket was quiet once again until December 12, 2018, when the Court received a letter that was, for unclear reasons, formally addressed to U.S. Magistrate Judge Nina Y. Wang. (ECF No. 411 at 1.) Judge Wang has never had any involvement in this case. Regardless, Wodiuk asserted, "If you see my filings you'll see I'm highly competent the basics of law making the Racketeering problem of competency one of human trafficking and not of pure merit of competency law." (*Id.*)

11.    Graziano's Second Rule 41(b) Motion

On December 26, 2018, Graziano filed her Second Motion to Dismiss for Failure to Prosecute (ECF No. 412), which was essentially an updated version of her previous motion (*see* Part I.D.3, above). Two days later, the Court denied the motion, stating it was "too soon to consider this form of relief. The Court administratively closed the case only three months ago and the time has not yet come for even the first status report." (ECF No. 413.)

12.    Status Reports & Graziano's Third Rule 41(b) Motion

On April 1, 2019, the Court received a status report from Wodiuk's counsel. (ECF No. 414.) The report stated that Wodiuk was still being involuntarily held at the Fort Logan state hospital, but had "shown signs of improvement while the doctors continue to adjust her medications." (*Id.* at 1.)

On October 2, 2019, Wodiuk's counsel filed another status report stating that Wodiuk had some sort of hearing in her Pueblo court proceeding on July 24, 2019, and, the next day, the state hospital discharged her to her own home. (ECF No. 415 at 1.) However, Mr. Glatstein had "not been able to obtain information as to whether Ms. Wodiuk has been determined to be mentally competent." (*Id.*)

On October 18, 2019, Graziano filed her Third Motion to Dismiss for Failure to Prosecute (ECF No. 418), *i.e.*, the Rule 41(b) Motion currently at issue. In addition to Graziano's previous arguments for Rule 41(b) dismissal (as augmented by passage of yet more time), Graziano interpreted Mr. Glatstein's inability to learn anything meaningful about Wodiuk's condition since her discharge as demonstrating that Wodiuk was refusing to cooperate with him. (*Id.* at 8, 11.)

Because the case was still administratively closed, there was nothing to dismiss, technically speaking, but the Court construed the motion as one to reopen the case and then to dismiss it under Rule 41(b). (ECF No. 419.) With that understanding, the Court ordered Wodiuk's counsel to respond. (*Id.*)

The response brief asserted that "the Pueblo County District Court determined [in late October 2019] that Plaintiff remains mentally incompetent to proceed in her criminal case." (ECF No. 420 at 1.) As for the substance of the Rule 41(b) Motion, the response asserted that the increased delay still had not created real prejudice to Graziano, and that the delay was not due to Wodiuk's willful conduct, but her mental illness. (*Id.* at 2, 3.)

The Court found the response brief inadequate to address the issues. Therefore, on November 12, 2019, the Court ordered Wodiuk's counsel to file a supplemental brief, as follows:

> Plaintiff is hereby on notice that the Court is seriously considering granting Defendant's motion, for essentially the reasons argued by Defendant and/or because it is unclear that this case will ever reach a resolution within a reasonable timeframe. In that light, the Court ORDERS Plaintiff to file a supplemental response with a declaration from the guardian ad litem ("GAL") addressing at least the following: (1) the GAL's current ability to communicate meaningfully with

Plaintiff; (2) the GAL's understanding of Plaintiff's current situation (including her mental capacity, ongoing medical care, living arrangements, and any other information that would assist the Court in understanding Plaintiff's circumstances); and (3) the GAL's estimate of when Plaintiff will be in a position to resume litigating this case on the merits.

(ECF No. 421.)  The Court set a December 13, 2019 deadline for this brief.  (*Id.*)

On the appointed deadline, Wodiuk's counsel filed a supplemental brief.  (ECF No. 424.)  The brief attaches a declaration from Mr. Glatstein reporting that he spoke with Wodiuk by telephone.  (ECF No. 424-1 ¶ 3.)  During that conversation, Wodiuk asserted that she was mentally competent and she would not produce any of her mental health records, deeming that to be a violation of her medical privacy rights.  (*Id.*)  Wodiuk also refused to provide Mr. Glatstein with any information about her living arrangements, or any means of contacting her other than her telephone number and a PO Box.  (*Id.* ¶ 4.)  "Based on [this] conversation and my past communications with Ms. Wodiuk," Mr. Glatstein reported that "I do not believe I have the current ability to communicate meaningfully with Ms. Wodiuk."  (*Id.*)

Mr.  Glatstein had nonetheless been able to obtain some records from Fort Logan.  According to that institution's discharge summary, "Ms. Wodiuk demonstrated 'much improved presentation' toward the end of her hospitalization, but still had 'apparent fixed delusions about Police, Courts etc.'"  (*Id.* ¶ 5.)  Finally, Mr. Glatstein opined, "I believe that Ms. Wodiuk remains mentally incompetent.  However, because of Ms. Wodiuk's refusal to cooperate, I cannot begin to gauge when she will become mentally competent and capable of participating in this case in a meaningful way."  (*Id.* ¶ 7.)

On December 17, 2019, the Court issued an order reserving ruling on the Rule

41(b) Motion. (ECF No. 426.) "In these complicated circumstances," the Court found that "the best way forward [was] to attempt to complete the unfinished discovery and then to evaluate the propriety of dismissal in that light." (*Id.* at 1.) The Court then ordered as follows:

> Plaintiff is ORDERED to sit for a reopened deposition, as authorized by the late Magistrate Judge Craig B. Shaffer (*see* ECF No. 29), at a time mutually convenient to all participating parties and attorneys, but in no event later than **February 14, 2020**, and this deposition may cover the topics for which it was authorized regardless of Plaintiff's abandonment, or willingness to abandon, the theories to which Plaintiff believes those topics are relevant;

> Plaintiff is ORDERED to submit to a Federal Rule of Civil Procedure 35 examination, as authorized by Judge Shaffer (*see* ECF No. 114), no later than **February 14, 2020**;

> Plaintiff is hereby WARNED that failure to cooperate in the scheduling of, or to meaningfully participate in, the reopened deposition and/or the Rule 35 examination, shall be deemed a basis in favor of granting the Rule 41(b) Motion;

> If the foregoing discovery does not take place by February 14, 2020, Defendant shall file a status report with the Court on **February 17, 2020**. Otherwise, no later than **March 13, 2020**, Defendant shall file a notice attaching: (i) the complete transcript of Plaintiff's original deposition; (ii) the complete transcript of Plaintiff's reopened deposition; and (iii) the examiner's report resulting from the Rule 35 examination. The examiner's report shall be filed under Restricted Access, Level 1, and no motion to maintain that restriction is necessary; and

> The Guardian ad Litem shall ensure that a copy of this order is promptly mailed to Plaintiff at her address on file (*see* ECF No. 422).

(*Id.* at 1–2.)

13. <u>Attempts to Complete Discovery & Motions to Withdraw from Mr. Glantz, Ms. Day, and Mr. Glatstein</u>

The Court began receiving filings directly from Wodiuk again in early January

2020. Specifically, the Court received a "demand for relief: medical extortion in white collar crimes, threats and terrorizing," complaining that (among numerous other things) Mr. Glatstein "still to this day has NEVER protected me" or "reported this medical extortion and fraud to Medicaid, FBI or the Colorado attorney general's office." (ECF No. 429 at 1–2.) The Court also received a "demand for relief: to unconstitutional demands ordered against due process and pro se rights to legal counsel in such guardian ad litem appointsments made as done in solicitation and organized crime conspired in prohbited acts made in this case," in which she complained about being "forced to have a GAL Mr. Glatstein against all due process" and being "denied legal counsel on her behalf." (ECF No. 430 at 1.) In this same document, she asserted that the requirement to sit for a deposition by February 14 was "this unconstitutional courts unlawful demands" and that she would be "unable to meet any demand this court has placed until proper legal counsel has been appointed." (*Id.* at 2.) She also asserted that Judge Shaffer did not have jurisdiction (as a magistrate judge) "to appoint any mental health matters or GAL's to this case." (*Id.*) Finally, she asserted that Mr. Glatstein "has acted in maliciousness in doing irreparable harm towards Dr. Wodiuk and her legal rights and all that it encompasses." (*Id.* at 3.)

On January 13, 2020, the Court entered an order striking these filings (because Wodiuk is not a member of the bar of this Court nor, at that time, an unrepresented party). (ECF No. 432.) The Court further

> repeat[ed] its warning to Plaintiff "that failure to cooperate in the scheduling of, or to meaningfully participate in, the reopened deposition and/or the Rule 35 examination, shall be deemed a basis in favor of granting Defendant's Rule 41(b) Motion." (ECF No. 426 ¶ 4.) In simpler terms, Plaintiff must participate in good faith in the deposition and the

independent medical examination, and she must do so by
February 14, 2020, or the Court may dismiss this case.

(*Id.* at 2.)

Finally, the Court rejected Wodiuk's attack on Judge Shaffer's jurisdiction:

Magistrate Judge Shaffer was a duly appointed United
States Magistrate Judge and was exercising his jurisdiction
to enter orders on nondispositive matters as authorized by
28 U.S.C. § 636(b)(1)(A).  If Plaintiff disagreed with those
orders, she had fourteen days to file an objection.  *See* Fed.
R. Civ. P. 72(a).  She never did so, and therefore forfeited
any challenge she may have had.

(*Id.*)

The Court directed the Clerk to mail a copy of this order to Wodiuk at her address

on file (id. at 3), and the Clerk entered a certificate of service by mail attesting to having

done so (ECF No. 433).

The filings continued to come, however.  On January 14, 2020, the Court

received a "motion for: civil rights to be enforced and adheared to as well as a case

investigator to be appointed to this case."  (ECF No. 434.)  The document asserts many

of her previous arguments, and also includes a lengthy attack on Messrs. Glantz and

Glatstein for "failing their obligatory duties to Dr. Wodiuk," such as failing to protect her

in the Pueblo criminal proceeding, an eminent domain proceeding of some sort, a

habeas corpus proceeding, and aiding and abetting "the unlawful removal of my child

from this country in a Linderberg crime of kidnapping in 2018."  (*Id.* at 1–5.)

On January 21, 2020, the Court received a "demand for relief: unconstitutional

medical evalautions not noted on the record for who, what, where, when, how

Dr. Wodiuk is to be evaluated making this evaluation a witch hunt."  (ECF No. 436.)

This document notes a phone call with Mr. Glatstein on January 15, apparently about a

Rule 35 examination.  (*Id.* at 1.)  Wodiuk asserted that she "does not have to adhere to any evaluations without an attorney representing her first and does not have to comply with the white collar conspired and organized evaluator (doctor) until it is noted in a hearing and placed on this courts records first. . . . Dr. Heidi Wodiuk is being forced to get medical evaluations with the doctors that are NOT of Dr. Wodiuk's choosing as Dr. Wodiuk is entitled."  (*Id.* at 1–2.)  Wodiuk also complained that Mr. Glatstein hung up on her, and she accordingly speculated that he was "suffering serious medical and mental problems as [he] is unable to hear Dr. Wodiuk legal concerns."  (*Id.* at 3.)

Also on January 21, 2020, the Court received from Graziano a Motion to Compel or, in the Alternative, Motion to Request Ruling on Defendant's Motion to Dismiss. (ECF No. 437.)  This motion reported that Graziano's counsel had sent Wodiuk's counsel a Rule 35 notice of an independent psychological evaluation, and a few days later, the psychologist retained to perform the evaluation informed Graziano's counsel that Wodiuk had contacted him directly, demanding a copy of the questions he plans to ask and a copy of a "civil handbook for competency."  (*Id.* ¶¶ 12–13.)  In this light, and in light of her "demand for relief" filed earlier that day, Graziano believed that Wodiuk would not meaningfully cooperate with the Rule 35 procedure.  (*Id.* ¶ 20.)  Graziano suggested that the Court could compel Wodiuk to cooperate, or proceed directly to adjudicating the Rule 41(b) Motion.  (*Id.* ¶¶ 23–27.)

The Court denied this motion on January 22, 2020, stating that Wodiuk had twice been warned about the need to cooperate and so there was no need for an additional order to that effect.  (ECF No. 438.)  Moreover, the Court stated that it "sees no reason to cut short Plaintiff's February 14 deadline and move directly to the Rule 41(b)

dismissal analysis." (*Id.*)

In the next couple of days, the Court received several more documents from Wodiuk. These included a "motion for civil competency handbook and competency questions to be produced and served to Dr. Wodiuk immediately" (ECF No. 439) and copies of its six letters she had recently sent to either Mr. Glantz or Mr. Glatstein, or both (ECF No. 442). As relevant here, these letters continue to display Wodiuk's antagonistic views toward Messrs. Glantz and Glatstein, for example:

- "I therefore hold you Mr. Glantz along with Mr. Glatstein legally responsible for the irreparable hardships', losses', damages', cruel and unusual pain and suffering, loss of liberty and life for 15CR1287 and this case 14CV02931 as you have acted criminally in abusing your authorities and power to harm my entire life by failing to act within the law as required to do so in these legal matters'." (ECF No. 442 at 1.)

- "Cease and desist your crimes' against me and all my rights." (ECF No. 442-1 at 1.)

- A bill to Mr. Glantz asserting that he owes Wodiuk $1,425,600 "within thirty days." (ECF No. 442-2 at 1.)

On January 23, 2020, Graziano filed a Motion for Extension of Time and for Sanctions. (ECF No. 440.) This motion stated that the psychologist Graziano had retained for the Rule 35 exam had withdrawn his willingness to do so based on phone messages indicating "that performing this evaluation will be problematic if not impossible." (*Id.* ¶ 15.) The psychologist perceived some of these phone messages as threatening. (*Id.* ¶ 16.) Graziano's counsel went on to state that they had been unable

to secure another doctor to perform the examination by February 14, so Wodiuk's actions had deprived Graziano of the opportunity to complete discovery.  (*Id.* ¶¶ 18–19.)

Also on January 23, 2020, Mr. Glantz and Ms. Day moved for leave to withdraw as counsel, and also moved on Mr. Glatstein's behalf to have him discharged as the guardian ad litem.  (ECF No. 441.)  Mr. Glantz and Ms. Day justified their withdrawal due to "professional considerations."  (*Id.* ¶ 8.)  Mr. Glatstein justified his termination because "he can no longer maintain a working relationship with Plaintiff."  (*Id.* ¶ 9.)

On January 27, 2020, the Court denied Graziano's motion for an extension of time and sanctions, noting that it "did not order Defendant to succeed in completing the outstanding discovery.  The Court ordered Defendant only to attempt to do so in good faith.  Plaintiff's obstruction and non-cooperation has thus far created an additional record in favor of Rule 41(b) dismissal, which the Court continues to contemplate."  (ECF No. 443.)  The Court directed the Clerk to mail a copy of that order to Wodiuk at her address on file (*id.*), and the Clerk filed a certificate of service attesting to having done so (ECF No. 445).

14.    Final Developments Before the Discovery Deadline

Between Graziano's motion and the Court's order denying it, and in the days immediately after the Court's order, the Court received yet more filings from Wodiuk.  (ECF Nos. 444, 446, 448, 449.)  These documents are generally of the same character as her previous filings.  The only matters worth noting are that Wodiuk apparently learned that Ms. Day had also entered an appearance on her behalf, so she began criticizing Ms. Day as well (ECF No. 444 at 1; ECF No. 449), and Wodiuk asserted that she would not allow herself to be evaluated by Graziano's chosen psychologist (ECF No. 446 at 1; ECF No. 448).

From February 5 to February 12, 2020, the Court received additional letters, notices, and demands for relief from Wodiuk. (ECF Nos. 452, 453, 454, 457, 458, 459.) The major points from these filings were that:

- Wodiuk was writing to other doctors whom Graziano's counsel had apparently lined up to perform Rule 35 examinations, accusing these doctors of, *e.g.*, "white collar organized crime as well as racketeering." (ECF No. 452 at 1; *see also* ECF Nos. 452-2, 452-5; ECF No. 454 at 1.)

- She continued to accuse Mr. Glatstein of mental illness. (ECF No. 452-4.)

- She attacked Ms. Day as not properly representing her. (ECF No. 452-3; ECF No. 454 at 4; ECF No. 459.)

- She continued to assert that Mr. Glantz, Ms. Day, and Mr. Glatstein had failed to protect her interests or meet her demands. (ECF No. 454 at 4–7.)

- She insisted that she had already "complied," in substance, "with the off the open record laws in a sedition order of rule 35 made in intimidation, terrorism and organized crime," because she had been "seen by legitimate medical doctors numerous times to establish a working relationship Dr. Wodiuk is highly capable of and can prove beyond a reasonable doubt." (ECF No. 458.)

On February 13, 2020, Mr. Glantz filed, on Wodiuk's behalf, a motion for extension of the February 14 deadline because Wodiuk had sent him a facsimile transmission on the evening of February 12, claiming she had been "snowed in" and "will not be getting out" to attend a rescheduled deposition and Rule 35 examination on

February 13.  (ECF No. 455 at 1.)[9]

On February 14, 2020, the Court denied Wodiuk's motion.  (ECF No. 461.)  The Court stated that Wodiuk had been warned multiple times about the importance of the February 14 deadline, and that the record so far showed that she had interfered with attempts to depose her and conduct a Rule 35 exam in January.  Therefore, "the fact that the deposition and Rule 35 examination were scheduled so close to the February 14 deadline appears attributable largely to Plaintiff's own obstructive behavior."  (*Id.*) Moreover, Wodiuk had not described, *e.g.*, the sort of vehicle she drives, the resources she has at her own disposal to clear away snow, "and the various other details the Court would need to know to ensure that this claim of being 'snowed in' is not another convenient excuse to avoid her discovery obligations."  (*Id.*)

On February 18, 2020, Graziano filed a status report stating that no discovery had taken place by the February 14 deadline.  (ECF No. 462.)  The status report details essentially the narrative above regarding her counsel's repeatedly frustrated efforts to complete discovery.

On February 18 and 19, 2020, the Court received more letters and other filings from Wodiuk showing that she continued to act antagonistically toward Mr. Glantz, Ms. Day, and Mr. Glatstein, and that she continued to make demands on, and accusations against, proposed Rule 35 examiners.  (*See* ECF Nos. 463, 467.)

On February 20, 2020, the Court granted the motion to withdraw filed by Mr. Glantz, Ms. Day, and Mr. Glatstein: "The record amply shows the Plaintiff exhibits animosity toward, and distrust of, her attorneys, and will not allow them to represent her;

---

[9] Several days later, Wodiuk filed with the Court a copy of the document faxed to Mr. Glantz.  (ECF No. 467 at 1–2.)

and that she actively resists the efforts of the guardian ad litem." (ECF No. 464.) The Court therefore returned Wodiuk to her *pro se* status. The Court also reopened the case "to consider [Graziano's Rule 41(b) Motion] on its merits," and otherwise stayed all proceedings. (ECF No. 465.) The Clerk served these orders by mail on Wodiuk. (ECF No. 466.)

## F. Proceedings While Wodiuk Represented Herself (Third Time)

Between the Court's February 20 order and now, Wodiuk has continued to file letters, demands, and motions. (ECF Nos. 468, 469, 470, 471, 472, 473.) The only new material in these filings is Wodiuk's alleged discovery that Graziano has never been a state-certified peace officer. (*See* ECF Nos. 469, 471–73.) "This appears to be why the Colorado court judicial actors are acting so asininely idiotically stupid. Many of these court actors may be on the black web obtaining illegal black market exchanges in monies for this levy for war crime orchestrated on the USA and tax monies frauded to front the Hitler Copy cat war crime." (ECF No. 469 at 1.) None of Wodiuk's filings address the Rule 41(b) standards.[10]

## II. LEGAL STANDARD

Rule 41(b) provides that "[i]f the plaintiff fails to prosecute or to comply with [the Federal Rules of Civil Procedure] or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b).

"If the dismissal is with prejudice," as the Court considers in this case, "the district court must apply the factors [the Tenth Circuit] listed in *Ehrenhaus v. Reynolds*, 965

---

[10] Although perhaps difficult to believe, the foregoing narrative is not a complete catalog of everything Wodiuk has filed. The Court has skipped over (as not even remotely relevant) ECF Nos. 63, 64, 71, 86, 113, 129, 141, 168, 169, 191, 196, 197, 200, 203, 205, 224, and 239.

F.2d 916 (10th Cir. 1992)—namely, (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the litigant's culpability; (4) whether the court warned the noncomplying litigant that dismissal of the action was a likely sanction; and (5) the efficacy of lesser sanctions." *Banks v. Katzenmeyer*, 680 F. App'x 721, 724 (10th Cir. 2017) (internal quotation marks omitted).

Under this framework, "dismissal is warranted when 'the aggravating factors outweigh the judicial system's strong predisposition to resolve cases on their merits.'" *Ecclesiastes 9:10-11-12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1144 (10th Cir. 2007) (quoting *Ehrenhaus*, 965 F.2d at 921). Moreover, "[t]hese factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Ehrenhaus*, 965 F.2d at 921.

### III. ANALYSIS

The Court will examine the *Ehrenhaus* factors in sequence.

### A.     Actual Prejudice to Defendant

Actual prejudice can include "delay and mounting attorney's fees." *Ehrenhaus*, 965 F.2d at 921. The delay in this case has been extensive: five-and-a-half years.

As for attorneys' fees, the Court has no specific information from Graziano, but the Court is confident that her attorneys are not working *pro bono*. Delay alone tends to generate more fees the necessary. Added to that is the sheer volume of Wodiuk's filings, which Graziano's attorneys were forced to review and decipher. Thus, Graziano has suffered actual prejudice.

### B.     Interference with the Judicial Process

Interference with the judicial process includes "wilfully fail[ing] to comply with a direct court order." *Ehrenhaus*, 965 F.2d at 921. The Court counts at least four

instances when Wodiuk disregarded or refused to comply with court orders:

- Judge Shaffer's November 2016 order that she cease filing motions while the case was administratively closed (Part I.D.2, above);

- Judge Shaffer's similar, but more explicit, order to the same effect in December 2016 (*id.*);

- Judge Shaffer's October 2017 order that she "may not filing anything" while represented by counsel and a guardian ad litem (*see* Part I.E.3, above), and

- this Court's order that Wodiuk sit for her renewed deposition, and for a Rule 35 exam, on or before February 14, 2020 (Part I.E.13, above).

In addition to disobeying Court orders, the Court finds that Wodiuk has interfered with the judicial process in other ways. Most notably, she has buried the Court and the parties in an avalanche of frivolous filings, using this lawsuit as a megaphone through which to complain about seemingly every grievance she possesses against anyone, and to publicize her conspiracy theories. The amount of time spent by the Court and its staff members simply processing and sifting through this mass of words has been enormous.

Wodiuk has also displayed open disrespect for judicial officers. She has actively subverted the attorneys whom the Court appointed to represent her *pro bono*. She has similarly subverted the Court-appointed guardian ad litem. If the wheels-of-justice metaphor has any meaning, she has managed to jam hundreds of wrenches into the spokes.

In short, Wodiuk has caused incalculable interference with the judicial process.

## C.    Plaintiff's Culpability

Any discussion of Wodiuk's culpability must start with whether she understands what she is doing.  Her most recent diagnosis from the state hospital is beyond question: she suffers from fixed delusions about the police, courts, and other centers of governmental authority, but she is otherwise capable of living in the community and caring for herself.  (*See* Part I.E.12, above.)  She has previously been a licensed acupuncturist.  (*See* Part I.A.4, above.)  Although Graziano has intended to challenge Wodiuk's damages claim about increased maintenance expenses of rental properties, there has been no suggestion that she did not actually own or manage properties— indeed, the basis of her Pueblo criminal prosecution was, among other things, that she unlawfully placed Franti's name on the deeds to multiple properties that she owns.  (*See* Part I.B.1, above.)

Wodiuk's interactions with the Court are also important to consider.  Without doubt her written submissions are informed by her delusions, and are frequently ungrammatical (often due to inserting as many inflammatory adjectives as she can think of).  However, when she has been ordered to appear in person, she has always done so—and there is no suggestion in the record that her verbal interactions with Judge Shaffer were incoherent, even if informed by delusions.  There is also no suggestion that she hallucinates about what is happening to her in the moment.  Rather, she processes what happens to her through the lens of her delusions and then acts (or at least speaks) accordingly.

Finally, her filings—particularly those made after the Court ordered her to cooperate in completing discovery by February 14—convince the Court that she fully understood what was required of her and the consequences of not complying, but that

she feels entitled to make up her own rules.  The Court especially notes her filing received by the court on February 12, 2018, in which she claims to have already complied with the Rule 35 order by visiting her own doctors (ECF No. 458); and her attempt to excuse herself from appearing for her deposition and Rule 35 examination on February 13, ostensibly due to heavy snow (ECF No. 455 at 1).  These are the tactics of someone who understands what is of expected her and is making a record to justify the decision to disobey.

In short, Wodiuk has a serious mental illness, but it does not prevent her from understanding the difference between obedience and disobedience, nor from choosing between the two.  For all these reasons, the Court finds that Wodiuk culpably violated the Court's orders.  *Cf. Ehrenhaus*, 965 F.2d at 921 ("wil[l]ful and intentional disobedience" enough to support a finding of culpability).

## D.    Prior Warnings

The Court explicitly warned Wodiuk on three occasions that Rule 41(b) dismissal was a possible outcome if she did not cooperate in completing discovery.  (*See* ECF Nos. 426, 432, 443.)  Wodiuk's filings subsequent to each of these orders show that she received and understood these warnings.

## E.    Efficacy of Lesser Sanctions

It is difficult to think of a lesser sanction that would be effective in this case.  The Court has already tried administrative closure, in hopes that the situation would improve.  Ordering Wodiuk (again) to sit for a deposition and a Rule 35 examination, and (in addition) to pay Graziano's attorneys' fees incurred in the runaround since December, would be futile in light of the record developed above.  Striking her deposition and then proceeding to trial would also be futile, although in a somewhat

different way—the outcome of the trial would be a foregone conclusion. A set of adverse inference instructions tailored to the situation would almost certainly have the same result. For example, consider the question of injury causation. What reasonable jury is likely to find for Wodiuk if (a) it hears evidence that her claimed injuries may have had a different source than the encounter with Graziano and (b) the Court instructs the jury to take into account that Wodiuk refused to sit for an independent medical examination regarding those injuries? In short, no sanction short of dismissal—to the extent it can be distinguished from the practical equivalent of dismissal—appears appropriate.

Moreover, the very exercise of considering lesser sanctions presumes that the case can somehow go to trial. It cannot. The Court will not attempt to appoint *pro bono* counsel again. The record shows that Wodiuk has taken an antagonistic relationship toward every attorney assigned to represent her, whether in this case or in the Pueblo criminal proceedings. For essentially the same reasons, the Court will not consider appointing another guardian ad litem. Whatever competency means in a civil lawsuit, Wodiuk has shown ample competency to interfere with every effort made to assist her.

Yet the case clearly cannot proceed with Wodiuk representing herself. Thus, this is one of those extremely rare instances where, regardless of the merits, the process required to *resolve* the case on the merits would devolve into a circus—ultimately *reducing* confidence in the efficacy of the justice system, despite good intentions.

For all these reasons, the Court finds that no sanction short of dismissal will suffice.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Graziano's Third Motion to Dismiss for Failure to Prosecute (ECF No. 418) is GRANTED, and this case is accordingly DISMISSED WITH PREJUDICE;

2. All pending motions, "demands for relief," etc., filed by Plaintiff are DENIED;

3. The Clerk shall enter judgment in favor of Defendant and against Plaintiff, and shall terminate this case; and

4. The Defendant shall have her costs upon compliance with D.C.COLO.LCivR 54.1.

Dated this 6th day of April, 2020.

BY THE COURT:

William J. Martinez
United States District Judge